DENISON *v.* ALPENA LOAN & BUILDING ASSOCIATION.

1. BUILDING AND LOAN ASSOCIATIONS—WITHDRAWAL OF STOCK.
    That installments are due and unpaid on shares of stock in a building and loan association does not take away the member's right to withdraw the stock under 3 How. Stat. § 3981*f*, providing that any stockholder wishing to withdraw shall have power to do so by giving a specified notice, unless the stock is "held in pledge for security," as such limitation applies only to a borrowing member who has pledged his stock as security for the loan.[1]

2. SAME—DEFENSES.
    The question as to the personal liability of a withdrawing member of a building and loan association for embezzlement by the secretary while such withdrawing member was a member of the auditing committee, though not a director, of the association, and accepted the reports of the secretary as correct, cannot be litigated in an action by such member to recover the amount due him.

3. SAME—ASSIGNMENT OF STOCK—RECORD OF TRANSFER.
    A building and loan association cannot defeat an action by a withdrawing member for the amount due him on the ground that he had acquired the stock by assignment, and no transfer

[1] Withdrawals from building and loan associations is the subject of annotation to the case of *Engelhardt* v. *Fifth Ward, etc., Loan Ass'n,* (N. Y.) 35 L. R. A. 289.

had been made on the books of the association, where he was a member of the association at the time of the transfer, and the association recognized him as the owner of such stock after the transfer to him.

Error to Alpena; Kelley, J.   Submitted April 20, 1898. Decided May 17, 1898.

*Assumpsit* by William F. Denison against the Alpena Loan & Building Association to recover an amount due plaintiff as a withdrawing stockholder of defendant corporation.   From a judgment for plaintiff on verdict directed by the court, defendant brings error.   Affirmed.

*J. D. Turnbull*, for appellant.

*Dafoe & Gustin*, for appellee.

Long, J.   This action is brought to recover from defendant association the amount claimed to be due plaintiff as a withdrawal stockholder upon 30 shares of the first series of defendant's capital stock, and for amount due William R. Hyatt as a withdrawal stockholder upon two shares of the same series, which were sold and transferred to plaintiff January 16, 1897, and after Hyatt had filed his notice of withdrawal.   Defendant pleaded the general issue, and gave notice that it would show that defendant had no funds on hand to pay the plaintiff's claim.   It also gave notice that a former secretary had converted and appropriated some of its funds, and that said appropriation and loss were accomplished through the connivance or gross carelessness of plaintiff, he being one of the auditors or special agents of the defendant.   The court directed a verdict for plaintiff of $2,088.61.

The defendant association was organized under Act No. 50, Pub. Acts 1887 (3 How. Stat. chap. 119*a*).   Section 6 of this act (3 How. Stat. § 3981*f*) provides:

"Any stockholder wishing to withdraw from the corporation shall have the power to do so by giving 30 days' notice in writing at a stated meeting of his inten-

tion to withdraw, when he shall be entitled to receive the amount paid in by him, and such interest thereon, or such proportion of the profits thereon, as the by-laws may determine, less all fines and other charges; but payments of the stock so withdrawn shall only be due when the funds applicable to the demand of withdrawing stockholders are sufficient to meet and liquidate the same, and then only in the order of the respective times of presentation of the notices of such withdrawal: *Provided,* that at no time shall more than one-half of the funds of the treasury of the corporation be applicable to the demands of withdrawing stockholders without the consent of the board of directors, and that no stockholder shall be entitled to withdraw whose stock is held in pledge for security."

Section 1 of article 15 of the by-laws provides

"All members desiring to withdraw from the association, as provided in section 6 of the act under which this association is organized, shall, after 30 days' notice, be entitled to receive the amount paid in by them (except membership fee), and 6 per cent. per annum, except on advanced payments; but no member shall be entitled to interest until he has been a member 6 months."

It appears that plaintiff first took, by assignment, 10 shares of the stock December 7, 1889, and these shares were surrendered, and new certificates issued to him by defendant. On May 13, 1891, he took, by assignment, another 10 shares, and, on the same day, also another 10 shares. This last 20 shares so assigned were held by plaintiff, and no new certificates were issued to him thereon; but he paid to the association all the dues and installments thereon up to the time of the withdrawal notice, except for the months of April, May, and June, 1896. Mr. Hyatt had paid all installments due before his notice of withdrawal, and before the assignment to plaintiff. At the time plaintiff and Hyatt filed their withdrawal notices and surrendered their stock to defendant, the defendant's secretary indorsed on plaintiff's notice as follows:

Books Nos. 35, 41, and 143, 10 shares, 1st Series, Each.

| | |
|---|---|
| Installments paid in | $1,455 00 |
| Interest | 606 25 |
| Total | $2,061 25 |

On Hyatt's notice was indorsed:

| | |
|---|---|
| Installments paid in | $95 00 |
| Interest | 39 58 |
| Total | $134 58 |

The court found the amount less than this,—that is, to be $2,138.99,—and deducted from this sum the penalties and the unpaid installments for the months of April, May, and June, of $50.38, and therefore directed the verdict at $2,088.61.

1. It is the contention of counsel for defendant that the plaintiff had no right under the statute to withdraw, for the reason that there were three installments due and unpaid upon his shares of stock; that the correct interpretation of the statute is that, where such installments remain unpaid, the association has a lien upon the stock for unpaid installments, the same as if it were pledged for security. We think the court below was not in error in holding that there was no evidence in the case showing that "this stock was pledged or put up as security by the plaintiff." By the provisions of section 6, above quoted, where the stock is pledged for security, the stockholder is not permitted to withdraw; but this section of the act does not prohibit a withdrawal simply for the reason that installments remain unpaid. What the statute means is that a stockholder who has borrowed from the corporation, and pledged his stock as security, cannot withdraw until he has redeemed his stock by the payment of the loan or an unconditional tender of it. *Anderson Building, etc., Ass'n* v. *Thompson*, 88 Ind. 405 (4 Am. & Eng. Corp. Cas. 196).

2. It is further contended that there were no available funds in the treasury to meet this demand. The secretary of the association testified that there was only one withdrawal notice ahead of the plaintiff, and that was for only $500. He also stated that during the months from July, 1896, to December, 1896, inclusive, there was paid into the treasury the sum of $24,745.02. Plaintiff's applica-

tion to withdraw was made to the association on July 10, 1896. When the demand was finally made and refused, there was in the treasury nearly $7,000 applicable to this withdrawal. We find nothing in the record in any manner contradicting this.

3. Counsel for defendant asked the court to charge the jury:

"*Second.* From the evidence in this case, the defendant is entitled to verdict for all losses that occurred to defendant through the plaintiff's neglect in not properly auditing Secretary Partridge's accounts, which were referred to plaintiff and others to look over and audit.

"*Third.* Defendant is entitled to a verdict of at least $3,100.06, the amount embezzled or taken by Partridge during the time that plaintiff acted as one of the auditors of defendant.

"*Fourth.* It was the duty of plaintiff, while acting as auditor of the defendant, to examine the books and accounts of defendant kept by Partridge, and to have reported to defendant any and all defalcations appearing from said books or accounts; and having failed to do this, either from neglect of duty or from design, the law will not permit him to recover in this suit, or recover at all, until the other shareholders receive their pay.

"*Fifth.* The plaintiff, as one of the defendant's auditors, having reported to defendant that its shares were worth so much per share, which included all of these defalcations as being on hand, the plaintiff therefore made false reports to defendant, which makes him liable to defendant for all damages or losses occasioned by said false reports, and it makes no difference whether he did this designedly or negligently."

These requests were refused, and, we think, very properly. It appears conclusively that the plaintiff was never a director of the association. He acted as one of the auditing committee, and it appears that, during a portion of the time in which he so acted, the secretary of the association embezzled certain of the funds. The court held that if the defendant could show that, at the time the notices of these withdrawals were filed, the defendant association was insolvent, the plaintiff could not recover. The de-

fendant failed to show this; but, on the contrary, it appeared that, after deducting these defalcations, the association was perfectly solvent. It also appears that, when the secretary's defalcations were suspected, an expert accountant was employed, who acted with the auditing committee; and then, for the first time, it was learned that a shortage in his accounts actually existed.

Counsel for defendant offered to show that the defendant association accepted reports from the auditing committee as correct, and paid out withdrawals to parties, taking these reports as a basis, and was injured thereby. It was said by the court:

"I do not think it competent in this action. I do not see how you can make that defense in this action. The defendant might have an action against Mr. Denison, if he is guilty of any improper conduct in making reports; but you cannot litigate it here."

Section 5 of the act under which defendant was incorporated (3 How. Stat. § 3981*e*) provides:

"The corporate powers shall be exercised by a board of directors. * * * The officers of the corporation must be members of the board of directors, and shall consist of a president, vice-president, secretary, and treasurer. * * * The secretary and treasurer shall give bonds and security, to be approved by the board of directors."

We think the court very properly held that the defendant could not litigate that question in the present case. Section 6 of the act under which the defendant was organized provides the conditions upon which payments shall be made upon withdrawal notices. These conditions existed at the time plaintiff attempted to withdraw; that is, a sufficient fund was on hand to meet the payments, and the stock was not held as security. Under such circumstances, he had the right to withdraw his funds. *Heinbokel* v. *National Savings, etc., Ass'n*, 58 Minn. 340 (49 Am. St. Rep. 519). It appeared that a proportionate share of the losses from the defalcations of the

secretary had been charged by the defendant company itself to the plaintiff before this suit was brought, and that there was left a large surplus in the treasury applicable to payments under withdrawal notices.

4. It is also contended that the plaintiff could not recover upon stock which had not been transferred to him upon the books of the company. It has been seen that all this stock came to plaintiff by assignment, and that only the first 10 shares purchased had been transferred upon the company's books. At this time he had become a member of the association, by signing the charter and by-laws. It would have been an idle ceremony for him to sign again in order to become a member. The company treated him as a member thereafter, and as the holder and owner of the other shares. It also collected from him from time to time the installments due upon the other shares, and thus recognized him as the holder and owner thereof. When his withdrawal notice was sent to the secretary, he treated him as such holder and owner of the entire 30 shares, and indorsed on the notice the amount of the installments paid on all.

We find no error in the record, and the judgment must be affirmed.

The other Justices concurred.