Claus Heinbokel *vs.* National Savings, Loan & Bldg. Ass'n.

Submitted on briefs June 11, 1894.    Affirmed July 23, 1894.

No. 8893.

**Mutual Building Associations, withdrawal of nonborrowing member.**

A nonborrowing member of a mutual building association, who has brought himself within the rules by notice of withdrawal, cannot bring an action and take judgment against the association when, under the statute Laws 1891, ch. 131, § 27 as well as in the by-laws of the association, there is no money in the treasury legally applicable to the payment of his claim.

Appeal by plaintiff, Claus Heinbokel, from an order of the District Court of Ramsey County, *William Louis Kelly*, J., made March 10, 1894, denying his motion for a new trial.

Plaintiff on July 1, 1889, purchased twenty shares of the installment stock of the defendant, the National Savings Loan and Building Association of St. Paul, of the par value of $100 each, to be matured by monthly payments of sixty cents on each share. No loan has ever been made or procured upon or by reason of the stock. He has made all the payments required amounting to $564, and in addition thereto has paid all other fees, dues and assessments. The plaintiff's share of profits on the stock was on June 19, 1893, $66.57. On that day he gave notice of withdrawal. Sixty days elapsed and he tendered his stock and passbook and demanded payment of the amount due him, but was refused. He then commenced this action to recover $618.79 with interest from that date. Defendant answered that $75.20 of the

payments was upon expense account and that only $488.80 had been paid by the plaintiff to the loan and guaranty fund. That the monthly payments were fifty cents on each share of stock and ten cents to expense account. That defendant's bylaws provide that at no time shall more than one half of the funds in the hands of the trustee be applicable to the demands of the withdrawing stockholders without the recorded consent of the defendant's directors, and that all applications for withdrawal shall be acted upon in the order in which they are received.

The answer further stated that over one hundred and twenty five prior notices of withdrawal had been received and remained unpaid, and that it had no money or funds that could be legally applied to the payment of plaintiff's demand, and that its assets were $121,426.50 mainly in mortgages, real estate and delinquent dues. The plaintiff replied, a jury was waived and the issues were tried on December 8, 1893. The court made findings and ordered judgment that plaintiff take nothing by this action. He moved for a new trial and being denied appeals.

*Holcombe & O'Reilly,* for appellant, cited *United States B. & L. Ass'n* v. *Silverman,* 85 Pa. St. 394; *Englehardt* v. *Fifth Ward P. D. S. & L. Ass'n,* 5 Misc. R. (N. Y.) 518.

*C. E. Hamilton* and *J. M. Hawthorne,* for respondent, cited *Christian's Appeal,* 102 Pa. St. 184; *Texas Homestead B. & L. Ass'n* v. *Kerr,* 13 S. W. Rep. 1020; *In re Sunderland Bl'dg Soc.,* 24 Q. B. D. 394.

COLLINS, J.     Section 4 of article 2 of defendant's by-laws reads as follows: "A shareholder may withdraw at any time upon giving sixty (60) days' notice in writing to the association, when he shall receive the amount of the installments actually paid in by him on such shares, together with the interest thereon, if any, at the rate fixed by the board of directors, standing to the credit of his shares at last preceding adjustment of profits, less all fines and fees, amount paid in on expense account, and a proportional part of the losses, if any, and other charges accrued subsequent to said last preceding adjustment of profits: provided, however, that at no time shall more than

one-half of the funds in the hands of the trustee be applicable to the demands of withdrawing stockholders without the recorded consent of the directors."

Subsequent to the adoption of these by-laws, the same regulation, in substance, was incorporated into the statutes of this state Laws 1889, ch. 236, § 27; and by an amendment thereto Laws 1891, ch. 131, § 27 it was provided that "not more than one-half of the amount received in payment on stock by" a building association "in any one month shall be used to pay withdrawals without the consent of the board of directors." The plaintiff became a member of the defendant association in July, 1889, and the question now presented for determination is plainly stated thus: Can a nonborrowing member of a mutual building association, who has brought himself within the rules by notice of withdrawal, be permitted to bring an action and take judgment against the association when, by reason of the statute and the by-laws, there is no money in the treasury legally applicable to the payment of his claim? In *United States B. & L. Ass'n* v. *Silverman*, 85 Pa. St. 394, it was determined that he could, the statute under consideration being almost identical in language with section 27, *supra*, and with defendant's by-law. The same conclusion was reached in the Buffalo (N. Y.) superior court,—*Englehardt* v. *Fifth Ward P. D. S. & L. Ass'n* 5 Misc. R. 518, (25 N. Y. Supp. 835,)—the chief justice dissenting; and Mr. Endlich, in his work on Building Associations (sections 141–143), coincides. The reasoning of the court in the *Silverman* Case is that, as the stockholder ceases to be a member of the association after due notice of withdrawal, he may, upon refusal of payment, sue it, and recover judgment, just as any other creditor. The suggestion that the proviso in the statute stands in the way of his becoming a general creditor, and that he must be governed by it, is disposed of by urging that, if this be so, the withdrawing stockholder is in a most unfortunate position, for the association "may never choose to make the necessary provision" for payment of the claim, and therefore he can never have process to compel it so to do. It is asked, when will the association have the money,—"in one, six, or ten years, or ever, and will the statute of limitations be suspended in the meantime?" And finally it is said that the design of the statute can be better met by giving the plaintiff judgment, and

then, should it seem equitable to the trial court, it may restrain execution, in order that the association may have a reasonable time in which to raise the necessary money.

If a stockholder, upon withdrawal, became a general creditor of the association, there would be force in the position that he could (because his rights would be those of a general creditor) bring suit immediately, and obtain a judgment.    But it is obvious that a stockholder who withdraws from one of these associations cannot properly be regarded as having the rights of the ordinary creditor, and this was admitted by the same learned court in a later case, (*Christian's Appeal*, 102 Pa. St. 189,) in which it was frankly stated that there was manifest error in the *Silverman* Case in putting withdrawing stockholders in the position of general creditors.    The conclusion in the case just mentioned loses potency when we discover that the reasoning is unsound.    Again, with respect to the query therein as to the effect of the statute of limitations, it can be observed that in no case can the statute commence to run until the right of action accrues.

In assuming the relation of a member of the association plaintiff contracted with reference to and was to be governed by its by-laws in so far as they were reasonable, and not opposed to our statutory provisions regulating associations of this character.    He agreed to abide by the condition of the treasury in case of a withdrawal, and to take his money when funds properly applicable for the purpose were on hand.    He was not to be paid until these funds were in the treasury, and, although he could at any time cease to be a member, and terminate his obligation to make monthly payments, the amount to be returned to him did not then become due or payable except in a certain contingency.    If not absolutely and immediately due and payable at withdrawal, it is difficult to see how his cause of action was then maintainable.    When the debt is due and payable, the right to sue, the right to obtain a judgment, and the right to have execution to enforce collection in the usual and ordinary course of procedure are his.    And the fallacy of the reasoning in the *Silverman* Case is strikingly apparent when we see that a withdrawing member is first squarely placed in the category of ordinary general creditors, and then—evidently in order to prevent the wreck and ruin of such associations—it is said that he

may be deprived of the benefit of immediate process to collect his judgment. The collection of a judgment obtained by an ordinary general creditor cannot be postponed and delayed in that way. Again, we see no force in the remark that the corporation may never make provision for the payment of the claim, and therefore it cannot be compelled to pay. Provision for the liquidation of the claims of withdrawing members is not optional with the association, for, as long as withdrawals are pending, it is obliged to set aside one-half of its receipts for the purpose of meeting and canceling such claims. Its ability to pay depends upon the fidelity with which remaining members discharge their obligations, and this is what all subscribers agree to when taking shares. Again, when considering the language of the by-law and the statute, as well as the rights and remedies of withdrawing stockholders, it must be remembered that if, upon refusal to pay, because not in funds, a suit may be brought at once, and prosecuted to judgment, even if further proceedings could be stayed by the court, such judgment would, as soon as docketed, become a lien upon all real estate, having priority even over a later judgment obtained by a general creditor. In this way a withdrawing member could not only secure superior rights as against other members, but also over a creditor whose judgment was based upon an independent claim. In addition to this, the association would be seriously crippled and embarrassed, for no sale of its real property could be made so long as the lien remained.

The right to withdraw and to receive back what has been paid into the treasury by a member of the association exists solely by virtue of the by-law or the statute. If this right to receive money out of the treasury is made to depend upon its condition, the right is not perfect or absolute until that condition exists. We think the by-law and the statute equally plain, and to mean that, until there is money available for the purpose, no cause of action exists. This is the conclusion of the chief justice, who dissented in the *Englehardt* Case, and also that reached in the Supreme Court of Texas in May, 1890, *Texas Homestead B. & L. Ass'n* v. *Kerr*, which we have been unable to find reported except in 13 S. W. 1020.

It follows that there must be proper allegations in the complaint and proof upon trial as to the existence of funds out of which payment can properly be made.

Of course we have been speaking of a case in which there has been no bad faith upon the part of the association. If it should neglect its duty towards withdrawing members by failing to take proper steps for replenishing its treasury, a proper remedy could be found.

Order affirmed.

BUCK, J., did not sit.

(Opinion published 59 N. W. 1050.)

