O. J. STILWELL, RESPONDENT, *v.* THE PEOPLE'S BUILDING, LOAN, AND SAVING ASSOCIATION, APPELLANT.

BUILDING AND LOAN ASSOCIATION — MEMBERS — OF WHAT THEY MUST TAKE NOTICE — BY-LAWS — CHARTER — LAWS OF STATE. WITHDRAWING MEMBER — TO WHAT ENTITLED — WHAT HE MUST ALLEGE AND PROVE.

1. *Building and Loan Association — Members — Of What They Must Take Notice — By-Laws — Charter — Laws of State.*

When a party becomes a member of a building and loan association he is bound to take notice not only of his certificate of membership, but also of the articles of association and existing by-laws, and the laws of the State where the Association is incorporated and conducts its business. And the making and adopting of needful and reasonable by-laws being sanctioned by the laws of the State, and the alteration and amendment of existing by-laws being authorized by the

19 Utah—17.

articles and by-laws when respondent became a member, he accepted the membership with notice of such powers, and became subject to such amendments as might be made during his membership, which were reasonable, not an enfringement upon vested rights or in violation of the charter or statute.

2. *Withdrawing Member — To What Entitled — What He Must Allege and Prove.*

Upon the withdrawal of a member of a building and loan association he assumes the rôle of a creditor having a claim subject to his antecedent agreement of membership. He is only entitled to his money upon terms and in manner provided in the by-laws, and if the amount per month which the association may pay upon withdrawals is limited, it is necessary for a withdrawing member, in an action on his claim, to allege and prove that at the time he commenced his action there were funds in the treasury applicable to the payment of his claim.

(Decided April 8th, 1899.)

Rehearing denied May 2, 1899.

Appeal from the Second District Court, Weber County, Hon. H. H. Rolapp, *Judge.*

Action by plaintiff after withdrawal from the defendant company for the withdrawal value of five shares of capital stock.

From a judgment for plaintiff defendant appeals. *Reversed.*

The opinion states the facts.

*Valentine Gideon, Esq.,* for appellants.

Plaintiff had been a stockholder in the defendant company prior to the date that this certificate of stock was issued to him, and he is conclusively presumed in law to know the plans, purposes, rules, and regulations of the association which he entered. Morawetz on Corporations, Vol. 1, p. 96.

By the terms of the certificate of shares, the articles of association, by-laws, terms, and conditions printed thereon, together with the application, are to be read and construed together as the contract made and entered into between the plaintiff and the defendant association. *Van Nostrand* v. *N. Y. Guaranty, etc., Co.*, 39 Sup. Ct. Rep., 73; *Marsh* v. *Dodge*, 66 N. Y., 533; *Seward* v. *Huntington*, 94 N. Y., 104; *Gibbs* v. *Long Island Bank*, 83 Hun., 92; *O'Malley* v. *The People's Bldg. Assn.*, 36 N. Y. Supp., 1016 ; *Englehardt* v. *5th Ward Loan Assn.*, 148 N. Y. Rep., 281 ; Thompson on Building Associations, pp. 15 and 16, and cases cited; Thompson's Commentaries on Corporations, Vol. 1, Sec. 1136.

A member of an association is bound by all by-laws, rules, and regulations, and his rights and duties are to be measured thereby. Beach on Corporations, Vol. 1, p. 521.

There is no allegation in the complaint, neither is there any attempt to show on the part of the plaintiff, that there was money in the treasury which could be withdrawn to pay this plaintiff, and it being a condition of his contract that before he could recover there must be money in the treasury, it is incumbent upon him to allege and prove that fact. *Heinboker* v. *National Assn.*, Minn., 340, (S. C.), 59 N. W. Rep., 1050; *Englehardt* v. *Fifth Ward Permanent Dime Sav. & Loan Assn.*, 148 N. Y., 281; *Brett* v. *The Monarch Investment Society*, L. R. 1 Q. B. Div. (1894), 267; *Barnard* v. *Thompson*, 1 Ch. Div., 374; *Texas Bldg. & Loan Assn.* v. *Kerr.*, 13 S. W., 1020; *Pawlick* v. *Homestead*, 37 N. Y. Supp., 164.

The plaintiff contracted with the defendant company with notice that the by-law might be amended if it became necessary. Such an amendment has been held lawful and binding upon the stockholders, although their con-

tract antedated the amendment under the identical statute under which the association was organized. *Englehardt* v. *Fifth Ward P. D. S. & L. Ass'n* (N. Y.), 42 N. E., 710; see also *Pawlick* v. *Homestead Saving Ass'n*, 37 N. Y. Supp., 164; *Hoyt* v. *Interocean Bldg. Ass'n*, 58 Minn., 345.

It is insisted by respondent that as his stock is "fully paid-up stock" his relation to the association is different from the ordinary stockholders." The authorities do not sustain that contention. *Towle* v. *American B. & L. Ass'n*, 75 Fed. Rep., 938; *Gibson et al.*, v. *Safety Homestead Loan Ass'n*, 48 N. E. Rep., 580; Endlich on Bldg. Ass'ns, 2d ed., 108; 81 Fed. Rep., 776.

*H. H. Henderson, Esq.*, for respondent.

Respondent claims that (the by-law in question) did not affect the contract or the certificate of stock delivered to him; that his right to be paid at the time mentioned in the certificate of stock and the by-laws that were in force at that time (the date of issuance) was a vested right and could not be impaired without his consent. *Holyoke Bldg. & Loan Ass'n* v̄ *Lewis*, 27 Pac., 872; *Bergman* v. *Ass'n*, 29 Minn., 275 (L 3 N. W. Rep., 120).

There is only one error assigned by appellant in which there can be any merit, and that is this: —

"Was it necessary for plaintiff to allege and prove that there were sufficient funds in the treasury of the defendant corporation at the time he commenced this action to pay his claim?"

The overwhelming weight of authority is that this was not necessary. The courts have universally held, with one exception, that the plaintiff had a right to maintain this action at law, and that it was a matter of defense for the defendant to allege and prove that it had not sufficient

funds to pay this claim, and, even if the defendant should allege and prove that it did not have sufficient funds to pay, then, in that case, the plaintiff would be entitled to judgment, and if a sufficient showing had been made by defendant that a great injustice would be done to it and its members, then it would lie in the discretion of the trial court to stay execution.   Endlich on Bldg. Ass'n, par. 111; *U. S. Bldg. & Loan Ass'n* v. *Silverman*, 85 Penn., 394; *O'Rourke* v. *The West Penn.*, *L. B. A.*, 93 Pa., 308; *Atwood* v. *Dumas*, 149 Mass., 167; *Latimer* v. *The Equit. L. & Sav. Ass'n*, 81 Fed., 776; *Prairie State Loan Ass'n* v. *Gorrie*, 47 N. E. (Ill.), 739; *Mc Nab* v. *So Mont. B. & L. Ass'n* (S. C.), 27 S. E., 543; LI. Am. & Eng. Enc. of Law, p. 621 (1st ed.); *Bldg. & Loan Ass'n* v. *Paxton* (Texas), 33 S. W., 389; *La Pore* v. *Twin City B. &. L. Ass'n*, 5 Pa. Sup., 276; *Reynolds* v. *N. Y. B. & L. Ass'n*, 35 N. Y. S., 80; *O'Malley* v. *Pac. B. & L. Ass'n*, 35 N. Y. S., 14.

BARTCH, C. J.

The defendant is a building, loan, and saving association, organized and existing by virtue of the laws of New York.   On November 10, 1892, the plaintiff became the owner of five shares of its fully paid-up stock, which were of the par value of $500, and were represented by a certificate bearing that date.   The certificate provided, among other things, that at the option of the holder, the sum of $300 might be withdrawn any time after three years from date thereof, together with interest thereon, from date of certificate, at the rate of six per centum per annum.   The by-laws at that time provided likewise, and in Art. 20 thereof contained a provision that "payments of all claims upon certificates of shares shall be made within sixty days from the date of approval of the same

by the Board of Directors or a majority thereof," with an exception of such as are otherwise provided for in Art. 19, which is not material in this case.

The articles of association and the by-laws contained provisions under which the by-laws might be amended from time to time, as might be necessary for the convenient and effective transaction of the business of the corporation. Art. 29, of amendments to the by-laws, which was in force at the time the plaintiff became a member of the association, reads: "Members holding paid-up certificates may, upon the surrender of said certificates, withdraw the amount of the same, at any time after three years from date of issue, and before maturity, together with an annual interest of six per cent. Said interest shall be computed upon the withdrawal of paid-up certificates for even months only, and such paid-up certificates shall cease bearing interest after the date of such application for withdrawal."

Afterward, on December 2, 1893, Art. 19 of the by-laws was amended, so that "only one half of the receipts of the association in any one month" shall be applicable to the payment of claims.

Art. 39, of amendments to the by-laws, which was adopted on January 12, 1895, provides as follows: "All certificates for withdrawal must be filed with the secretary of the association, at the home office, properly receipted, and thirty days' notice of intention to withdraw may be required to be given therewith. Upon the filing of notice of withdrawal the payment of dues on the shares shall cease, and the withdrawal value thereof shall be calculated as of the date of the filing of such notice, but no interest upon the withdrawal value of shares shall be paid. Payments shall be made in the order of the applications for withdrawal, but the association shall not be required to

pay out on withdrawing any matured stock more than one half the amount received from dues and stock payments in any month.   The board of directors may apply any portion of the entire income of the association to the payment of withdrawing members whenever in their judgment they shall deem it necessary and proper.   A withdrawal fee not to exceed two dollars per share may be charged upon installment stock, and may be deducted from the withdrawal value thereof."

On December 16, 1895, the plaintiff withdrew from the association and made demand on it for $300, and interest thereon at the rate of six per cent per annum from the date of his certificate.   To this demand the association replied that the claim would be paid in its regular order.   Afterward this suit was brought to recover that sum and interest.   At the trial, upon the plaintiff resting his case, the defendant moved for a non-suit upon the ground, "that the plaintiff has not alleged and has not proven that there are any funds in the hands of the association, which under the articles of agreement, bylaws, and laws of the State of New York, are subject to and that can legally be withdrawn for the payment of this particular stock."   This motion was overruled and judgment entered in favor of the plaintiff for the amount of his claim, and the action of the court in the premises is assigned as error.

It is not contended that any of the by-laws or amendments thereof are in contravention of the laws of New York, by virtue of which the defendant association exists, but it is claimed by the respondent that the amendments, above referred to, made after he became a member although before his withdrawal, do not apply to his case. He maintains that his contract must be construed in accordance with the by-laws which were in force when he

became a member of the association, unaffected by amendments or alterations made thereafter. We do not think this position is sound. When the respondent became a member of the association he was bound to take notice not only of his certificate, the articles of association, and existing by-laws, but also of the laws of New York, under which the corporation was organized and conducts its operations. All of these entered into and constituted his contract, and while it is true, at the time of the issuance of his certificate of stock it was provided in the by-laws that the " payment of all claims upon certificates of shares shall be made within sixty days from the date of approval of the same by the Board of Directors or a majority thereof," without the limitation that only one half of the receipts of the association in any one month should be applicable to the payment of claims, still the respondent was bound to take notice of the fact that the articles of association and the by-laws contained provisions authorizing the association to alter and amend its by-laws, and of the fact that the making and adopting of all needful and reasonable by-laws to regulate the due conduct of the corporate business was sanctioned by the laws of New York. Rev. Stat. N. Y., Vol. 2, Sec. 17, p. 1595. Indeed the power to make reasonable by-laws and regulations for the successful and proper conduct of its business is inherent in every such corporation, even if not expressly conferred by statute. 1 Thompson Corp., Sec. 955.

It is true, by-laws must not be unreasonable, or contravene the charter, or affect vested rights, or violate the law of the land, but subject to such restrictions, such a corporation may enact and adopt them whenever its operations and prosperity, in its judgment, may require them. Likewise, and for like reasons, the corporation may alter

or amend its by-laws, whenever it may be necessary in the pursuit or attainment of the objects of its creation.   1 Thompson Corp., Sec. 960.

When, therefore, the respondent became a member, he accepted membership with notice of these powers of the corporation.   He thus became subject not only to the by-laws or regulations then existing but also to such amendments as might be made thereto from time to time during the continuance of his membership, provided they were reasonable and not an infringement upon vested rights, or in violation of the charter or of any statute.   The amendments in question in this case, that "only one half the receipts of the association in any one month shall be applicable to the payment of all claims," and that "payments shall be made in the order of the applications for withdrawal," do not appear to be unreasonable.   Nor do they interfere with any vested right of the respondent or change the essential character of his contract with the association.   They simply constitute an arrangement whereby the operations of the corporation can be continued and the sudden and unexpected withdrawal of the funds necessary to carry on its corporate business, avoided. They tend to secure the association against embarrassment and loss which might result at any time if withdrawing members could compel immediate payment without reference to the condition of the treasury, and absorb the money necessary to continue its operations.   They apply to all members alike, and are calculated to enable the association to discharge its obligations to withdrawing members, and at the same time protect the interests of those who do not withdraw, and are thus not only reasonable but just and wise provisions.   The remedy of the shareholder to enforce the antecedent contract is somewhat affected by the amendments, but the contract itself is

not. They go simply to the time when members who are entitled to payment will actually be paid, and do not touch any question of principle, or affect the rights of members who have withdrawn to be repaid, or to be paid *inter se* according to priority of notice of withdrawal. The obligation to pay remains the same. The amendments are not in conflict with the charter, nor are they inconsistent with the law under which the association was created. The statute, among other things, provides: ''The withdrawing shareholder shall be paid the amount of the withdrawing value of his accumulations as determined under the by-laws, at the last distribution of profits before the notice of withdrawal, together with all dues paid since such distribution, and such interest on the value of the shares at the time of the last distribution and on the dues thereafter paid, as the by-laws shall determine, less any fines unpaid and a proportionate share of any unadjusted loss; provided, that at no time shall more than one half of receipts of the association, and when the association is indebted upon matured shares, no more than one third shall be applicable to the payment of withdrawing shareholders, without the consent of the board of directors; and when the demands of withdrawing shareholders exceed the moneys applicable to their payment, they shall be paid in the order in which their notices of withdrawal were filed with the secretary.''

The statutory provisions are quite similar to and are authority for those of the amendments. They were in force when the respondent became a shareholder, and, as we have seen, must be regarded as a part of his contract with the association. He must, therefore, be charged with having had notice, when he accepted his certificate, that the association had power to enact by-laws, not inconsistent with the statute, while he remained a member. The

amended by-laws, in question, thus, being reasonable and a legitimate exercise of power by the corporation, are binding upon the respondent, although made after he became a shareholder.

In *Engelhardt* v. *Fifth Ward Ass'n*, 148 N. Y., 281, Mr. Chief Justice Andrews, delivering the opinion of the court, and speaking of the powers of an association, under provisions of statutes similar to those herein construed, to pass by-laws, and of their effect as to members of the association, said: " The member of an association accepts membership with notice of the powers thus conferred. He is subject not only to regulations existing when he becomes a member, but to such as may be enacted from time to time by the association within the scope of the power given by the statute. It may be admitted that the association could not under this power destroy the contract between it and the member. But the contract was made in law subject to the power of the association to enact at any time reasonable by-laws. It would not be reasonable to extend this power so as to authorize the association by a subsequent by-law to change the essential character of an antecedent agreement between a member and the association, as for example, that a withdrawing member should not be repaid his dues. But a law more or less affecting the remedy of the shareholder may be passed, and existing members will be bound, so far at least as they consented to the exercise of such a power when they became members." Endlich on Bldg. Ass'ns, Secs. 114, 141, 143; Morawetz on Corp., Sec. 96; 1 Thomp. Corp., Secs. 1136, 1137; *Pawlick* v. *Homestead Loan Ass'n*, 37 N. Y. Sup., 164; *Heinbokel* v. *Natl. S. L. & B. Ass'n*, 58 Minn., 343; *Bernard* v. *Tomson*, 1 Ch. Div. (1894), 374; *Rosenberg* v. *Northumberland B. Soc.*, 22 Q. B. Div., 373; *Wilson* v. *Miles P. B. Society*, id., 381; *Towle* v.

*American B. & L. Ass'n*, 75 Fed. Rep., 938; *Latimer* v. *Equitable L. & I. Co.*, 81 Fed. Rep., 776; *Bradbury* v. *Wild*, 1 Ch. Div. (1893), 377.

Having concluded that the respondent was bound by the by-laws hereinbefore considered, the next question is, Was it necessary for the plaintiff to allege and prove that at the time he commenced his action there were funds in the treasury applicable to the payment of his claim?

We are inclined to answer this in the affirmative, the complaint containing no allegation of bad faith, fraud, or neglect on the part of the association. When the respondent became a member, he knew or ought to have known the probable resources of the corporation, and that it was its design to invest some of its receipts in securities or otherwise out of which to make profits, and apply but a part of them in liquidation of claims. His contract of membership rendered him subject to the articles of association, by-laws, and statutes governing the corporation. He thereby became entitled to the advantages and benefits, and also subject to the liabilities and disabilities of a member. He paid his dues in accordance with his contract, and only in accordance with his contract can he reclaim them. It is true, when he withdrew he ceased to be a member, and ceased to be longer subject to the advantages or liabilities of a member. He then assumed the rôle of a creditor having a claim still subject to his antecedent agreement, but he was not in the position of a general outside creditor who might enforce his claim without reference to any regulations of the association. The respondent's claim can be enforced only with reference to his membership, his contract with the association being still binding upon him with respect to the collection of the debt. His right to withdraw and to recover the money he had paid into the treasury exists only by virtue

of the by-laws and statute which are a part of his agreement.   The by-laws and statute, as we have seen, provide that only one half of the receipts of the association in any one month shall be applicable to the payment of claims, and such payments shall be made in the order of the applications for withdrawal.   If, therefore, such portion of the receipts has been disbursed in payment of claims presented anterior to his, and the available funds exhausted, his claim can not be paid until the treasury is replenished with further receipts.   It is thus apparent from a consideration of the agreement that the association has not undertaken to pay until there are available funds, and that it commits no breach of contract by refusing to pay before such time, it follows as a corollary that the withdrawing member's cause of action can not arise until the association has such funds.   Before breach of contract no cause of action accrues.   Hence, funds available for the payment of such a claim is a condition precedent to the right of recovery.   Such a debt is not due until money which can be applied in payment of it has been received by the association, and no cause of action arises until such contingency happens.   Therefore, when a withdrawing member of such a corporation, under such a contract, resorts to an action at law to enforce his claim, he must in the absence of any charge of bad faith, fraud, or negligence against the association, allege and prove the existence of funds which can properly be applied in payment of the debt.   *Heinbokel* v. *National S. L. & B. Ass'n*, 58 Minn., 340; *Texas Homestead B. & L. Ass'n* v. *Kerr*, 13, S. W. R., 1020; *Engelhardt* v. *Fifth Ward Loan Ass'n*, 148 N. Y., 281; *Englehardt* v. *Fifth Ward Loan Ass'n*, 25 N. Y. Supp., 838; *Buell* v. *Monarch Investment Bldg. Soc.*, 1 Q. B. Div. (1894), 367; *Barnard* v. *Tomson*, 1 Ch. Div. (1894), 374.

In the case at bar the plaintiff failed to allege and prove that the association at any time had any funds which were applicable, under his contract, to the payment of his claim. Nor is there any allegation in the complaint charging the defendant with bad faith, fraud, or neglect in providing the means with which to pay the debt. Nor was there any dispute as to the amount due the plaintiff from the association. The motion for a nonsuit should, therefore, have been granted.

We are aware that the authorities upon this question are not all harmonious, but we think those which support the conclusion reached herein rest upon the better reason.

The case must be reversed with costs, and remanded, and as it is not shown whether or not the association has available funds to pay the respondent's claim, the court may permit amendments to the pleadings, and upon failure of amendment to the complaint dismiss the action.

It is so ordered.

MINER, J., and BASKIN, J., concur.