## SAMUEL McINTYRE, APPELLANT *v.* THE AJAX MINING COMPANY, RESPONDENT.

NON-SUIT—MOTION FOR—WHAT IT SHOULD CONTAIN—MOTION SUSTAINED ONLY ON GROUNDS ALLEGED THEREIN — ACTION ON IMPLIED CONTRACT—PRIMA FACIE CASE—CONTRACT—CONSTRUCTION OF PARTICULAR TERMS—REASONABLE TIME—UNDER PARTICULAR FACTS—EVIDENCE—SUFFICIENCY OF—TO ESTABLISH PRIMA FACIE CASE.

*Non-Suit—Motion for—What it Should Contain—Motion Sustained Only on Grounds Alleged Therein.*

A party moving for a non-suit should specifically state the grounds upon which he bases his motion, and thereby call the

| | |
|---|---|
| 20 | 323 |
| f22 | 53 |
| 22 | 140 |
| 20 | 323 |
| 23 | 270 |
| 20 | 323 |
| 25 | 430 |
| 20 | 323 |
| 27 | 236 |
| 20 | 323 |
| 28 | 169 |
| e28 | 335 |
| 20 | 323 |
| 31 | 14 |
| 34 | 442 |

court's attention and that of the opposite party to the point on which he relies, for an appellate court will not sustain a motion for. a non-suit, except on the grounds alleged in the motion.[1]

## Contract—Construction of Particular Terms.

Where it is provided in a contract "that certain sums named shall be paid by the defendant mining company *pro rata out of the proceeds of ore sales, compromises or otherwise,*" and immediately thereafter it is provided that no other money shall be paid out, except for necessary operations, *until after* the payment of the sums mentioned, the proper construction of the terms mentioned is, that if the net proceeds of ore sales, and that derived from compromises, did not, within a reasonable time, amount to a sum sufficient to liquidate said amounts the obligation to pay was to become absolute, and not dependent upon either the proceeds of ore sales or compromises.[2]

## Reasonable Time—Under Particular Facts.

In the absence of any showing as to the facilities of the defendant corporation to produce from ore sales, compromises, or otherwise, the sums of $34,000, specified in the contract, twenty-seven months is not an unreasonable time in which to delay payment of said sums, and the time between the filing of the complaint and the trial cannot be taken into consideration in determining whether a reasonable time has elapsed, because it forms no part of plaintiff's cause of action, as set out in the complaint.

A promise to extend the time of performing a contract is not binding unless made upon some new consideration.

## Evidence—Sufficiency of—To Establish Prima Facie Case.

To establish a prima facie case, the evidence must show the existence of facts, which either alone, or aided by other facts, presumed to exist from those established by the evidence, warrant a recovery, if not overcome by counter evidence.

Where the plaintiff grounds his right of action on negative allegations, the negative averments which lie peculiarly

[1] *Frank* v. *Mining Co.*, 19 Utah, 35.
[2] *Johnson* v. *Schenck*, 15 Utah, 490.

within the knowledge of the opposing party are taken as true, unless disproved by that party.

Where the plaintiff's cause of action is not based upon any negative allegations, but the facts which he is required to prove are all affirmative, before the burden of proof can be shifted from the plaintiff he must make a prima facie case.

(Decided Oct. 16, 1899.)

Appeal from the Third District Court, Salt Lake County, Hon. Ogden Hiles, *Judge.*

Action to recover a certain sum on an assigned claim alleged as preferred before certain other indebtedness. From a judgment for defendants, plaintiff appealed. Affirmed.

*Messrs. Brown & Henderson, P. J. Daly, Esq.,* and *Messrs. Moyle, Zane & Costigan,* for appellant.

While it is unquestionably true that pools and combinations between stockholders may be made for the purpose of electing a board of directors that will carry out a particular policy in the conduct of the affairs of the company and that such combination is legal, yet when there is such a combination, that combination is charged with the utmost good faith to the minority stockholders, and the combination itself assumes all the liabilities and responsibilities pertaining to the corporation itself, for they have assumed its management and control and each member in it is charged with all the duties, liabilities and disabilities that would pertain to a director of the company, or that pertains to the company itself. *Miner* v. *Bell Ice Company.* 93 Mich. 97, S. C. 17 Law R. 412.

Although stockholders are not partners, nor strictly tenants in common of the corporate property, having an interest and power of legal control in exact proportion to

their respective amounts of stock. The corporation itself holds its property as a trust fund for the stockholders who have a joint interest in all its property and effects, and the relation between it and its several members is, for all practical purposes, that of trustee and *cestui que trust*. *Peabody* v. *Flint*, 6 Allen, 52, 56; *Hardy* v. *Land Co.*, L. R. 7 ch. App. 427; *Stevens* v. *Railroad Co.*, 29 Vt. 550.

When several persons have a common interest in property, equity will not allow one to appropriate it exclusively to himself, or to impair its value to the others. Community of interest involves mutual obligations. Persons occupying this relation towards each other are under an obligation to make the property or fund productive of the most that can be obtained from it for all who are interested in it; and those who seek to make profit out of it at the expense of those whose rights in it are the same as their own are unfaithful to the relation they have assumed, and are guilty, at least, of constructive fraud. *Jackson* v. *Ludling*, 21 Wall. 616, 622; Story Eq. Sec. 323.

The measure of duty, care, fidelity and disability, pertaining to directors, pertains also to the pool or combination controlling the stock. *Oil Co.* v. *Marbury*, 91 U. S. 587.

As to the right of the plaintiff to maintain this suit it is shown that he made every effort possible to get the directors to bring the action and they refused. Under such circumstances a stockholder has the right to bring the action in the right of the company making the company a party defendant. *Hawes* v. *Oakland*, 104 U. S. 450; Thompson on Corporations, Sec. 4479.

But where the defendants are stockholders or members of a pool or combination controlling the majority of the stock and they are charged with fraud the action may be

brought in the right of the corporation by a stockholder making the company a defendant without any demand. *Miner* v *Ice Co., supra,* and cases there cited.

*Messrs. King, Burton & King, Messrs. Dey & Street,* and *Messrs. Powers, Straup & Lippman,* for respondents.

Under the repeated decisions of this court, the decision of the trial court must be affirmed.

The case was regularly tried before a court of chancery and facts were clearly and fully found upon every issue.

Under such circumstances "The appellate court will not disturb such findings unless they are so manifestly erroneous as to demonstrate some oversight or mistake which materially affects the substantial rights of the appellant." *McKay* v. *Farr,* 15 Utah, 261; *Stahn* v. *Hall,* 10 Utah, 400; *Mining Co.* v. *Haws,* 7 Utah, 515; *Dooly Block* v. *Transit Co.,* 9 Utah, 31; *Whitesides* v. *Green,* 13 Utah, 341.

Surmise, suspicion, misstatements of facts, and extravagant unsupported cries of fraud and collusion, surely cannot avail against the defendant in this case, and constitute no basis for the interference of a court of equity. Fraud cannot be presumed from mere suspicious circumstances. *Ensign* v. *Fisher,* 14 Utah 477.

Baskin, J.

The plaintiff who is the appellant, in his complaint alleges, as a second cause of action that "on February 1st, 1895, one Frank Salisbury sold and conveyed to defendant an undivided half interest in the Champlain No. 2, and Fraction Mining claims, for the sum of $17,000, which sum defendant agreed to pay Salisbury. That on

May 1st, 1895, for a valuable consideration, Salisbury sold and assigned his said claim for said amount to one H. M. Ryan; that on or about September 6th, 1895, Ryan, for a valuable consideration sold and transferred to plaintiff $6,010 of the said $17,000 claim, and defendant was immediately informed of the assignment and transfer, and accepted the same, and promised and agreed to pay it."

The answer "admits that Salisbury sold and attempted to convey the property mentioned, and promised to give a perfect title, but failed to carry out said agreement and to convey the property so agreed. Denies that the defendant agreed to pay Salisbury $17,000, or any amount, but admits that it promised to pay him, on condition that the title to said property was clear and free from all incumbrances; that the title was perfect and that no suit or controversy affected it, and also that said amount nor any part of it should be paid until certain debts and obligations, aggregating a large amount, should be paid off and discharged, which said conditions, it alleges have not been complied with. Admits that Ryan sold and assigned $6,010 of the claim, but alleges that in the transaction McIntyre acted as the agent of the defendant and holds the said claim in behalf of the defendant.

The answer further alleges that certain misrepresentations were made by said Salisbury with reference to the property, upon which defendant relied. Also alleges that certain expenses incurred in attempting to perfect the title would have to be first deducted from the amount due. That plaintiff was fully aware of the outstanding claims prior to the purchase and knew that before any sum or amount could be paid, various sums, aggregating $60,-000.00 would have to be first paid by the defendant. That these claims have not been paid, but a large portion of them is due and defendant is as yet unable to pay and dis-

charge them.   That there is a contract, which was known to the plaintiff, by the terms of which $5,000 of the said $17,000 was to be preferred over and above the remaining $12,000, and the said $5,000 was to bear interest at the rate of eight per cent.   And the remaining $12,000, to be treated as security for the payment of the said $5,000, so preferred, together with interest.   That the interest was to be deducted from the $12,000, and that before the claim of plaintiff should be paid it would be subject to the interest thus advanced paid upon the said $5,000, and would not be due in any event until the $5,000 was first paid and discharged."

At the close of plaintiff's testimony the defendant moved for a non-suit upon the following grounds:

"First: That the evidence shows that the claim was not to be paid until it was paid out of the proceeds from sales of ore from the Ajax Mining Company's property; and it has not been shown that any profits have been derived whatsoever from sales of ore out of the Ajax Mining Company's property.

Second: That the claim was not to be paid until other claims aggregating a large sum had been paid, and that it is not shown that these claims have been paid.

Third: That the claim was expressly made subject to the prior payment to Frank Salisbury of $5,000, and interest thereon at the rate of eight per cent. per annum, out of the first moneys that became due on the total claim of $17,000 as shown by the minutes of May 6th, 1895, and it is not shown that Salisbury has ever received his $5,000.

Fourth: It is shown by the evidence that this was a secondary claim provided for in a certain trust deed; that these claims had been protected by reason of assessment that the stockholders had been compelled to pay. A motion seconded by the plaintiff was carried, reciting

that the stockholders had been compelled to pay large sums for the purpose of protecting this claim and that the amount so paid by them pursuant to assessment so levied should be refunded before payments were made to the holders of said secondary claims; and that the trust deed states expressly that this was a secondary claim, and amongst the last group of claims that were to be recognized in said trust deed; and it is not shown that these assessments have been refunded. Mr. McIntrye is bound absolutely by this resolution which he seconded himself, and which was the action of the corporation and of the directors, and in the faith of which the assessments were paid." The motion, so far as it relates to the second cause of action, was sustained, and an order was entered dismissing the same. From this order the plaintiff appealed.

In support of the order the respondent insists that the allegations of the complaint, hereinbefore mentioned, "sets forth an express agreement to pay the sum sued for, and that the evidence conclusively establishes a conditional promise to pay when certain defined precedent conditions were fulfilled."

The evidence shows that the said Frank Salisbury, and certain other parties, being desirous of forming a corporation for the purpose of working certain mining claims, among which was the said Champlain No. 2, on the 7th of June, 1894, entered into a contract in which it was agreed that a corporation should be formed for said purpose, and that the owners of said mining claims should share in the capital stock in certain proportions therein named, and that certain interests which the said Salisbury and Peter C. Burke, who were parties to said contract, had in the said Champlain No. 2, conveyed by them to one John T. Sullivan, in trust for the corporation when formed, should, immediately upon the creation of such

corporation, be conveyed to it by the said Sullivan, and that there should be paid to the said Salisbury and Burke $34,000, and to one W. I. Snyder, the amount which he should thereafter pay in certain litigation, including $2,-000, to W. H. Dickson, and $1,000 to an expert, said payments to be made *pro rata* out of the proceeds of *ore sales, compromises or otherwise,* and that "the sum of $5,000 shall be paid to Salisbury, or his assigns, first of all. All of which are to be paid out and made good before any general dividend shall be paid out, or any other money except for necessary operations."

In pursuance of said agreement, the defendant corporation was formed, the said Sullivan conveyed the interest in the Champlain No. 2, held by him in trust, to the defendant. Plaintiff's demand is for that portion of said sum of $34,000, assigned to him.

Whether the action is one of special assumpsit, or one of general assumpsit, in either case the claim of the plaintiff is subject to the terms and conditions of said contract, and in either case the evidence to sustain the plaintiff's claim must be the same.

If, as claimed by the respondent, the action is on an express contract, then the evidence discloses a material variance which would have been fatal had the respondent made this variance a ground in the motion for a non-suit. This was not done. The substance of the several grounds of the motion is that the evidence conclusively shows that at the time the suit was brought, the conditions, precedent to the maturity of plaintiff's claim, had not occurred. Or, in other words, the evidence conclusively showed that the plaintiff's claim is not yet due.

In the case of *Frank* v. *Bullion Beck & Champion Min. Co.,* 19 Utah, 35, 56 Pacific, 421, this court said: "We are of the opinion, and so hold, that a party mov-

ing for a non-suit ought to be required to specifically state the grounds upon which he bases his motion, and thereby call the court's attention and that of the opposite party to the point on which he relies."

The doctrine so announced is supported by the authorities cited in said opinion.

In the case of *Palmer* v. *The Marysville Dem. Pub. Co.*, 90 Cal. 168, it is held that, " It is error for the trial court to grant a non-suit, unless the grounds therefor are called to the attention of the trial judge and the plaintiff at the time the motion is made; and where none of the grounds upon which the non-suit is asked are sufficient to warrant the court in granting the motion, the order granting it will be reversed, although another ground, not specified in the motion might have warranted the order."

An appellate court will not sustain a motion for a non-suit, except on the grounds alleged in the motion.

In view of the fact that the trial court, had objection, on account of variance, been made a ground in the motion for non-suit, might and probably would have, on motion, permitted the complaint to be amended so as to conform to the evidence, unless the defendant had shown that it would have been injured thereby, the question, (so elaborately discussed in the briefs of counsel) whether, as claimed by respondent, the plaintiff's action is one of special assumpsit on an express contract, or, as claimed by appellant, is one of general assumpsit on the common count, is not material.

It is necessary to look further into the evidence in order to determine what the defendant's obligations are, under the contract established thereby.

The defendant was not a party to the contract of June 7, 1894. At that date it had no corporate existence. Its liability accrued after its formation, not by virtue of any

expressed contract made with Salisbury and Burke, but by virtue of the conveyance to it by Sullivan, of the property held by him in trust. When the defendant accepted this conveyance there was formed, by implication of law, an implied contract, whereby the defendant immediately became obligated to pay to Salisbury and Burke, in accordance with the terms of the contract of June 7, 1894, the consideration of said conveyance, which was the said sum of $34,000. The obligation of the defendant to pay said sum, as provided in said contract, after the defendant company was incorporated, was specifically acknowledged in a number of resolutions passed by the board of directors, and after the assignment to the plaintiff the portion of said sum assigned to him was entered to the credit of the plaintiff in the books of the company.

It is claimed, however, by respondent, that said contract was expressly modified so as to subordinate the plaintiff's claim to a number of others, besides Salisbury's preferred claim of $5,000, amounting to a large sum.

The evidence in support of this alleged modification, consists of certain resolutions passed by defendant's board of directors, among which are the following, which fully illustrate all that was accomplished by said resolutions:

On the 6th day of May, 1895, the following resolution was passed:

"Whereas, the following claims are just and are recognized claims against this company, viz.: Josiah Barnett, trustee, and W. I. Snyder, on purchase money; Burke and Salisbury; Snyder and Shields, Ryan, Knox, McIntyre, and it is agreed that the same are to be paid in the following order: 1. Barnett, trustee, and subrogated claims balance purchase money. 2. To McIntyre, as per contract. 3. Snyder, $5,500. 4. Salisbury, or assigns, $5,000. 5. Burke and Salisbury, or assigns, $29,000;

Snyder and Shields, $19,635; Ryan and Knox $6,030 pro rata. 6. McIntyre for water right, etc." .

None of the claims mentioned in said resolution, except that of Salisbury and Burke, which after deducting the preferred claim of Salisbury ($5000.00) amounted to said sum of $29,000, had any relation to the claim of plaintiff, but the latter included the plaintiff's claim in this action.

It does not appear from the evidence that either Salisbury or Burke ever gave consent to the change mentioned in said resolution, or received any consideration, or did anything which would make said resolution binding on them. The resolution was simply a declaration that the defendant intended to perfer, in violation of its said implied contract, certain claims not embraced therein, and had no legal effect whatever on plaintiff's claim except that it was a recognition of the validity of the same. In fact its validity is not now disputed. The only claim of respondent is that it is not yet due and payable.

At a stockholders' meeting of said defendant held July 20, 1895, among other resolutions passed, and which was voted for by the plaintiff, who was then a stockholder, was the following: "That the board of directors be authorized and directed to enter into the following contract and trust deed as per the resolution heretofore adopted by said board of directors."

The proposed contract and trust deed referred to in said resolution was set out therein and in terms conveyed to Frank Knox and Samuel McIntyre (the plaintiff) trustees, six mining claims, among which was the Champlain No. 2. "Together with all the franchises, buildings and appurtenances thereunto belonging and in anywise appertaining. Also the water right heretofore acquired by said company from Samuel McIntyre was assigned and set over unto said Knox and McIntyre, trustees as aforesaid, and all of

the net proceeds and output of said mining property after paying the actual running expenses, only to and for the following uses and purposes. The said trustees were to leave the said Ajax Mining Company and its manager in possession and operation of said mining claims so long as it complies with the terms of this agreement, and shall receive from said mining company monthly an account of all ore sales and expenditures, and shall exact and receive the net proceeds and apply them as follows, to wit:

"First. All unpaid balances due to said Josiah Barnett, trustee, or his assigns, shall be paid and discharged.

"Second. All sums of money paid by members of the Ajax Mining Company on account of said debt due Josiah Barnett, trustee, including said $2,066 due said Frank Knox, and said $4,000 due said Samuel McIntyre.

"Third. Said $5,500 due said Snyder.

"Fourth. Said $5,000 or the unpaid portion thereof due said Frank Salisbury.

"Fifth. Said sum of $6,033 due said Frank Knox and Henry M. Ryan for advances as aforesaid.

"Sixth. The balance of said $29,000 due to Burke and Salisbury, or their assigns, as also said $19,635 due W. I. Snyder."

This proposed contract was never entered into or the trust deed ever executed, and the resolution authorizing the same was afterwards rescinded.

The foregoing action did not in any way change defendant's liability under its said implied contract and cuts no figure in the case, except as a recognition of plaintiff's claim, although much is said in the briefs regarding its effect.

At a meeting of the board of directors held January 22, 1896, and after the assignment to plaintiff of his claim, H. M. Ryan, a director, moved "that inasmuch as an

assessment had been levied, in order to pay the pressing obligations of the company, by reason of which the secondary claims against the company, provided for in the trust deed directed heretofore to be executed to Knox and McIntyre as trustees had been protected; and that the stockholders had been compelled to pay large sums for this purpose; that the amounts so paid by them pursuant to assessments so levied, be refunded before payments were made to the holders of said secondary claims."

The plaintiff, as witness, in his cross-examination, testified, as follows: " I believe I seconded that resolution; all that were there voted 'aye.' I assented to the resolution and understood the purport of it. Salisbury's claim was a secondary claim and I claimed to own this $6,010 at the time this resolution was passed."

The resolution relating to the contract and trust deed, before mentioned, had not been rescinded at the time plaintiff seconded the motion of Ryan, and the plaintiff had ceased to be an officer of the company before the date of said rescission.

The only effect of said resolution, if it had had any binding force, was to postpone the time of the performance of defendant's implied contract until after the large amounts paid on assessments by the stockholders should be refunded.

" A promise to extend the time of performing a contract will not be binding unless made upon some new consideration." *Stryker* v. *Vanderbilt*, 27 N. J. L. 68; *Babcock* v. *Kuntysch*, 32 N. Y. Sup. 663, 85 Hun, 616; *Gibson* v. *Daniel*, 17 Texas, 173; *Parmalee* v. *Thompson*, 45 N. Y. 58; Bishop on Contr. (1 ed.) Sec. 421; Beach on Contr. Sec. 168.

It does not appear from the evidence that any of the parties interested in said implied contract, except plaintiff,

assented to said resolution, or are in any manner bound thereby. The plaintiff received no money consideration. Nothing beneficial to the plaintiff or detrimental or beneficial to the defendant passed in the transaction, and therefore, if by the action of the plaintiff in seconding and voting for said resolution he promised to extend the time of payment, the same was void for want of consideration.

It is clear from the evidence that the defendant parted with nothing, and that it was under no legal obligation to refund to the stockholders the amounts paid on said assessments.

It appears from the statement of said motion that the stockholders had already paid said assessments, and it does not appear that they did so on the condition that the sums so paid should be refunded, or that at or before the time said motion was carried by the board of directors, any request was made by the stockholders for the repayment of said assessments.

Again said resolutions violated the rights of the parties in said implied contract, who in no way participated in the proceedings of the board.

We are clearly of the opinion, that said resolution did not modify said implied contract, or affect the rights of the plaintiff thereunder. Nor do we think that any evidence was introduced showing any modification of the same.

As the obligees of said implied contract have on their part paid, and the defendant has received the full consideration of said contract and nothing further remains to be done by the former, if the defendant has failed to perform its obligations under the contract in any material particular, and the evidence shows, *prima facie*, that fact, then the non-suit was improperly granted; otherwise it was not.

To understand the full bearing of the testimony it is

20 Utah—22.

necessary to construe the terms, ''That said two sums shall be paid *pro rata out of the proceeds of ore sales, compromises or otherwise*'' as used in the contract of June 7th, 1894.

Following these terms it is provided that no other money shall be paid out, except for necessary operations, until after the payment of the sums mentioned in said contract.

From this provision it is clear that the term ''proceeds of ore sales,'' was intended to include only the proceeds left after paying the expenses of necessary operations or in other words the net proceeds.

It is clear that the parties did not intend that payment was to be immediately made or should depend exclusively on the proceeds of ore sales and compromises, or that said claims should become due and payable only, when sufficient funds to pay said claims should be received from the proceeds of ore sales, or compromises, because if such had been the intention the term, or otherwise, would not have been used.

The proper construction of these terms is that if the net proceeds of ore sales, and that derived from compromises did not, within a reasonable time, amount to a sum sufficient to liquidate said claims, then payment was to be made otherwise; which means that after a lapse of a reasonable time, the obligation to pay was to become absolute, and not dependent upon either the proceeds of ore sales or compromises. (Bearing upon this question see cases cited in *Johnson* v. *Schenck*, 15 Utah, 490.)

It is implied from said terms that the net proceeds of the sale of ore and compromises should not be used except in payment of said claims.

It is claimed by appellant that a reasonable time in which to pay these claims mentioned in the contract of June 7th, 1894, from the proceeds of sales of ore or com-

promises, has expired.    The evidence shows that the conveyance by Sullivan, trustee, to the defendant, was made on the 22d of October, 1894.    This suit was brought on the 15th day of January, 1897.    Considering the amount to be thus raised, in the absence of evidence showing other circumstances, such as the state of development and the ore producing capacity of defendant's mines at the date of the incorporation; the grade of the ore, the distance from the market, facilities for working, etc., the lapse of time between the date of said conveyance and the institution of suit, is not sufficient to establish the fact claimed by appellant.

The time which elapsed between the filing of the complaint and the trial cannot be considered, because it constitutes no part of the plaintiff's cause of action as set out in the complaint, and could not be set out in a supplemental complaint.    *Wittenbrock* v. *Bittmer*, 57 Cal. 12.

It is further claimed by the appellant, that a prima facie case is made by the evidence.

To make such a case the evidence must show the existence of facts, which either alone or aided by other facts presumed to exist from those established by the evidence, warrant a recovery, if not overcome by counter evidence.

It was shown from the books of the defendant that, " on January 31st, 1896, there was an overdraft amounting to $356.43; on February 29th, the balance cash on hand was $6,054.47; March 31, $7,855.44; June 30th, $4,654.40; July 31, $4,074.86; August 31, $3,146.40; September 30th, $8,259.57; October 31st, $11,728.29; November 30th, $24,547.02; December 31st, $12,330.40; January 31st, 1897, (the month the suit was brought) $14,995.35.    The account also shows that the receipts of the company from ores sold between January 1st, 1896, and January 31st, 1897, was $113,244.09."

The appellant claims that this evidence made out a *prima facie* case of ability upon the part of defendant to meet plaintiff's claim.

The evidence also showed that besides the claims mentioned in the contract of June 7th, 1894, the defendant owed other claims, which, as stated in plaintiff's brief amounted to over $50,000.00; also that an assessment for a large sum, for the purpose of paying pressing obligations of the defendant, had been levied and paid by the stockholders.

From the foregoing facts no presumption of law arises, and standing alone they do not show, that either said balances represented profits from ore sales or the proceeds of compromises, nor does said gross proceeds of ore sales show that any profits were derived therefrom; and therefore, unless from the foregoing facts, the further fact, that said balances and gross products of ore sales, represent profits sufficient to liquidate the claims mentioned in the contract of June 7th, 1894, can be logically presumed, a *prima facie* case is not, thereby, made.

In Sec. 1226 of Wharton on Evidence, (3d ed.) it is stated that, "A presumption of fact is a logical argument from a fact to a fact; or, as the distinction is sometimes put, it is an argument which infers a fact otherwise doubtful, from a fact which is proved. Hence, a presumption of fact, to be valid, must rest on a fact in proof."

Bouvier's Dictionary, (Rawle's Rev.), defines presumptions of fact to be, "Inferences as to the existence of some fact drawn from the existence of some other fact; inferences which common sense draws from circumstances usually occurring in such cases."

Tested by these definitions is it either a common sense or logical deduction from the facts proven that said balances and gross proceeds of ore sales included any profits? We do not think so.

The contract of June 7th, 1894, provides that the expenses of operations should be paid, and it is therefore impossible, logically, to infer that there were any profits after such expenses are paid, or that it was not necessary to expend said balances in the payment of the expenses. Nor can it be presumed that the sum which the evidence shows was expended in payment of outside claims, was not money raised by assessment from the stockholders, for that purpose. A claim against defendant in favor of Snyder and Shields, which was of equal rank with plaintiff's claim, was paid part in money and part by a conveyance by defendant of the Cobb Tunnel, and eight acres at the mouth of same, but it does not appear from the evidence that the money paid was from the proceeds of defendant's mines, or was not paid out of the money raised by assessments; nor does it appear that the conveyance of said property in any way diminished the products of said mines.

We do not think that a prima facie case was made by the evidence.

It is also claimed by appellant that as "The defendant knew, or is presumed to know, what those necessary expenditures were. The facts were peculiarly within its knowledge. The lower court should have held that in the absence of proof upon the part of the defendant, it might be fairly inferred that these large receipts had not been eaten up by necessary expenses, particularly when the treasury of the company was shown to be in a flourishing condition, and moneys were shown to have been used for other purposes." ·

The plaintiff's cause of action does not depend upon any negative propositions, but the facts which he is required to prove in order to sustain his right to recover are all affirmative. In such cases the rule is that before the

burden of proof can be shifted from the plaintiff to the opposing party a *prima facie* case must be made by plaintiff, but when this is done, it devolves upon the defendant by counter evidence, to refute the case thus made.

The doctrine invoked by appellant's counsel applies, only, where the plaintiff grounds his right of action upon negative allegations; in which case the negative averments which *lie peculiarly within the knowledge* of the opposing party, are taken as true, unless disproved by that party. *Stillwell* v. *People's Bldg. L. & Sav. Assn.,* 19 Utah 257; 57 Pac. 14; Greenleaf on Ev. Secs. 78-79.

We are of the opinion that the non-suit was properly granted.

It is ordered that the judgment of the court below be affirmed, but without prejudice to any future action, and that the appellant pay the costs.

BARTCH, C. J. and MINER, J. concur.