### COLUMBIA BUILDING & LOAN ASS'N v. JUNQUIST et al.

(Circuit Court, D. Wyoming. May 24, 1899.)

1. BUILDING AND LOAN ASSOCIATIONS—MEMBERS—CONSTRUCTIVE NOTICE OF BY-LAWS.

A stockholder in a building and loan association is bound to take notice of the law under which it is incorporated and of the provisions of its by-laws.

**2. SAME—CONTRACTS WITH BORROWING STOCKHOLDERS—LIMITING NUMBER OF PAYMENTS.**

The essential principle of building and loan associations is that of mutuality between all the members, whether borrowers or nonborrowers; and such an association cannot contract with a borrowing member, to whom it has advanced the par value of his shares, that his indebtedness shall be canceled on the payment of interest and stock dues for a certain number of months, regardless of whether such payments in fact mature his stock.

In Equity.

Gibson Clark and J. Norman, for complainant.

McMicken & Blydenburg, for defendant.

RINER, District Judge. This is a suit in equity, brought to foreclose a trust deed given by the defendants to the plaintiff to secure the payment of the sum of $3,000. The plaintiff is a building and loan association. On the 4th of June, 1890, the defendant, William Junquist, became a member of the association by subscribing for 30 shares of its stock designated as "Stock A," and on that day a certificate for the stock was issued to him. On the 11th of December of the same year he borrowed the sum of $3,000, due six years after date, with interest and installments thereon, according to the by-laws and rules of the association; these amounts to be paid on or before the 5th day of each and every month, or to be counted as principal. While I have examined the evidence and briefs of counsel with great care, I have not had the time to prepare an opinion in writing, and shall only briefly state the grounds upon which my conclusions in this case are based. The plaintiff is a building and loan association organized under the laws of Colorado with the powers usually conferred upon associations of this character. While the statute may differ in some respects from the statutes of other states upon this subject, yet I think the powers conferred upon the corporation in this cause are substantially the same as those conferred upon and exercised by like corporations in other jurisdictions. The principle underlying its method of transacting business is mutuality, its object being to raise funds from its members to be loaned among themselves, or to such as may desire to avail themselves of the privilege. This is done by the payment, monthly, of certain amounts of interest and installments; and the stockholders, whether borrowers or nonborrowers, participate alike in the earnings of the association, and alike must assist in bearing the burden of any loss which it may sustain. All of the stock is matured and all of the loans are made from what is called the loan fund; indeed, this necessarily follows from the fact that there is no other fund from which the stock can be matured. All members receive the same per cent. of profit, for the reason that the dividends are declared on the entire business; and all payments made by every member go into the common fund, the profits of which are divided among the shareholders, and they must continue to pay until the stock is in due course matured. To allow payments to be applied to mature the loan of a borrowing member by a definite and fixed number of payments would destroy the essential principle

upon which the business is transacted, viz. that of mutuality. The true test in the determination of questions of this character is very clearly stated by the supreme court of Ohio in the case of Eversmann v. Schmitt, 41 N. E. 139, in the following words:

"And the exact test of his right to call for a cancellation of the mortgage given to secure his obligations as a borrower is the inquiry whether he would have been entitled to receive from the association the par value of the shares on which the loan was made had he not become a borrower."

Mr. Junquist became a member of the association in June, and it was not until December that he secured the loan. I think he was bound, as a member of the association, to take notice of the law under which the association was incorporated, and also of the by-laws of the association; and, as I understand the by-laws, if his stock matured within 6 years,—or 72 months,—and was worth 100 cents on the dollar, his loan would be paid; if not, he would be obliged to continue his payments until that result was attained. In this case, at the expiration of the six years, the stock had not matured, and therefore the debt was not paid; and, having failed to continue his monthly payments until the maturity of the stock, the right of the plaintiff to resort to its security for the collection of the balance became perfect. A decree will be entered finding the defendants indebted to the association in the sum of $3,000, with interest and dues according to the by-laws of the association, —that is to say, at the rate of $27.25 per month from and including June, 1896, to the date of the decree,—and for the amount of the insurance paid by the plaintiff to keep the premises covered by the trust deed insured; and, if the sum so found to be due be not paid within 30 days from the date of the decree, then the 30 shares of stock in the association issued by plaintiff to the defendant shall be sold for a price not less than its withdrawal value, the proceeds to be applied toward the payment so found to be due, and for any deficiency the property covered by the trust deed shall be sold in the manner provided by law.