ALEXANDER et al. v. SOUTHERN HOME BUILDING & LOAN ASS'N.

(Circuit Court, N. D. Georgia.  November 3, 1900.)

1. BUILDING AND LOAN ASSOCIATIONS—RECEIVERS—STOCKHOLDERS—PREFERENCE.
    Where the affairs of a building and loan association are placed in the hands of a receiver for settlement and winding up, the effect is to transform all the stockholders into creditors; and the holders of paid-up or full-paid stock, or those who gave notice of withdrawal before the receiver was appointed, should have no preference over the holders of installment stock.

2. SAME—LIABILITIES—SHARES OF STOCK—COMPUTATION.
    In computing the liabilities of an insolvent building and loan association, full-paid and paid-up stock on which dividends have been regularly paid should be computed at its par value; and all installment stock, whether or not there has been notice of withdrawals or loans made thereon, should be computed at its withdrawal value, as determined by the by-laws.

3. SAME—BORROWING MEMBERS—DIVIDENDS.
    In winding up the affairs of an insolvent building and loan association, the amount of the probable dividend which will be payable to borrowing stockholders may be computed and allowed to them as a credit on their loans, not as a matter of right or even strict equity, but rather as a compromise to aid in the speedy collection of the assets.

In Equity.

J. L. Hopkins & Sons and Rosser & Carter, for complainants.
Ellis & Ellis, for defendant.

PARDEE, Circuit Judge.  Upon an order of court made upon the petition of receivers reading as follows: "Upon reading and considering the foregoing petition of the receivers herein, it is ordered and decreed that said petition be, and it is hereby, referred to the master in this cause, Robert C. Alston, Esq., with direction and authority, after due notice to the solicitors of record in this cause, to take testimony, hear the petition upon all the issues of law and fact involved, and report fully to the court as to the subject-matter of said petition, and especially to ascertain and report what would be the proper basis for the adjustment, settlement, and collection, at this stage of the cause, of the obligations of the borrowing members of the defendant, Southern Home Building & Loan Association; and, in order that the collection of debts due the association may proceed without delay, the master is directed to make his investigations and report with all convenient speed,"—the special master has submitted an elaborate report, finding substantially that the holders of full-paid stock and the holders of stock in the different classes who have duly

given notice of withdrawal stand upon the same footing of priority as other stockholders, and that in settling with borrowing stockholders a credit should be allowed in the nature of an anticipatory dividend amounting to 32 per cent. of the amounts paid by said stockholders into the loan fund of the association. To this report certain holders of full-paid stock and certain holders of stock upon which notice of withdrawal had been given prior to the appointment of the receiver filed exceptions; the former claiming that they are not stockholders at all, but creditors, and entitled to be paid by preference over any and all stockholders; and the latter claiming that, as they had given notice of withdrawal prior to the appointment of the receiver, they are creditors with a lien upon the funds of the association, and entitled to be paid by preference over all stockholders. After an elaborate examination and full consideration, I am satisfied that the master's finding in regard to these two classes of stockholders is correct, and the authorities cited by him fully sustain his position. As the association is in the hands of a receiver, to be wound up and liquidated because of the impossibility to carry out the original scheme and purpose, it would be rank injustice to allow one class of investors to be paid in full at the expense of other investors equally innocent of all fault in the matter.

As to the credit in the nature of an anticipatory dividend to be allowed borrowing stockholders in the settlement and collection of the amounts due the association on loans, no exception has been filed; but, as the proper settlement of that matter is of prime importance, I have given it much consideration. When the bill in this case was filed the association was not insolvent, in the proper sense of the term. There were no debts to outside creditors of any importance. The mass of the obligations of the association were due and to become due to its members, who occupied the position of stockholders, with the right to become eventual creditors. The association is in the hands of the court for settlement and winding up because, for the many reasons stated in the bill, it is impossible to carry out the objects and purposes of the association. The practical effect of the appointment of the receiver for the purpose of winding it up is to turn or transform all the stockholders into creditors, and thus make the association insolvent; and the course to pursue under the bill is to collect the assets and distribute them as justice and equity require. As the obligations of the association are mainly due to stockholders, so the available assets consist of loans to stockholders based on shares of stock in the association, and these loans must be collected in order to make any distribution. In each contract of loan the value of the shares based on installments paid was a material element, and now has to be dealt with, whether the borrower complied strictly with his contract, and paid all installments as the same became due, or after some payments became in default. According to the by-laws, every share of class A stock upon which all monthly payments have been made may be withdrawn after one year, and every share of stock in classes B, C, and D upon which all monthly payments have been made may be withdrawn after two years from date of issue. The by-laws give fixed and certain rules for ascertaining the with-

drawal value of any and all shares of stock. In settling with the borrowing stockholders and collecting the amount of loan, it would be very desirable to be able to allow as a credit on the loan the full withdrawal value of the stock upon which the loan was based; but this, which would be just and equitable if the association were to continue a going concern, becomes unjust and inequitable when it is considered that the object and purpose of the association cannot be carried out, and the association must be wound up and its affairs settled substantially as an insolvent corporation, in the strict sense of the term; and this because the effect would be to throw all the expense of winding up and all the losses upon the nonborrowing stockholders, of whom it may be said that, while they are no more innocent stockholders than the borrowing stockholders, yet they are the only individuals paying money into this association who have received no benefit therefrom. As the assets of the association are collected, it will be necessary in the progress of the case to decree an equitable distribution, and a consideration of the basis of distribution will throw some light upon the matter. By the report of the master, neither the full-paid stock, nor the stock upon which notice of withdrawal had been given, is entitled to any priority over holders of installment stock; and whether all are treated as stockholders or as unsecured creditors makes little difference, provided all are treated alike, and just and equal rules are applied in determining the amount of stock in the one case, or the amount of debt in the other. The holders of full-paid stock paid in the par value thereof, and, according to the terms of the contract, have ever since received 6 per cent. dividend thereon, and this up to the time the receiver was appointed. In listing them for distribution either as stockholders or as creditors, there seems to be no other fair way than to list them on the par value of the stock; and this, it is to be noticed, does no violence to the contract. The holders of stock who had given notice of withdrawal prior to the appointment of a receiver cannot well be listed on any other basis than the withdrawal value of said stock, as determined by the rules and by-laws of the association. If these propositions with regard to the holders of full-paid stock and of certain withdrawn stock are correct, it follows that, in order to do equity in the decree of distribution, all the installment stock should be listed for distribution on the basis of its withdrawal value at the time the receiver was appointed, as determined by the by-laws of the association. As the withdrawal value of the installment stock must then be the basis of distribution to holders thereof, it would seem that the credit or anticipatory dividend to be allowed borrowing stockholders in the amicable settlement and adjustment of their loans should be based upon the withdrawal value of the stock, and not upon the amounts paid by them into the so-called loan fund. In addition to this, it is to be noticed that the loan fund which was provided for by the original by-laws, and under which, perhaps, a large amount of class A stock was subscribed, was in 1897 abolished, and since that date there has been no loan fund per se set apart on the books of the association; and this furnishes an additional reason why the amounts paid into the loan fund should not be taken as the basis for an anticipatory

dividend. For these and other reasons hereinbefore given, I am reasonably clear that the anticipatory dividend to be allowed borrowing stockholders should be based upon the withdrawal value of the stock.

The special master, in his very exhaustive report, after fully considering the assets of the association, and making apparently very liberal deductions for bad loans and insufficiently secured loans, gives the following tabulated statement of the assets of the association:

| | |
|---|---:|
| Loans on real estate | $300,000 00 |
| Loans on stock | 68,000 00 |
| Bills receivable | 20,000 00 |
| Real estate | 40,000 00 |
| Insurance advanced | 1,250 00 |
| Office furniture and fixtures | 500 00 |
| Arrears of dues to April 1, 1900 | 16,050 90 |
| Interest and premiums due on loans to April 1, 1900 | 34,421 68 |
| Cash on hand and in bank | 24,637 35 |
| | $504,859 93 |

Giving the same consideration to liabilities of the concern, he gives the following table:

| | |
|---|---:|
| Amount paid in on installment stock, class A | $372,380 67 |
| " " " " " " " B | 2,866 40 |
| " " " " " " " C | 661 50 |
| " " " " " " " D | 2,096 50 |
| " " " " paid-up stock | 3,505 00 |
| " " " " full-paid stock | 134,100 00 |
| " " " " sundry accounts | 1,278 05 |
| To this must be added the amount of dues in arrears, because this item has been given a value in the assets | 52,177 35 |
| | $569,005 47 |

As to expenses of administration, based upon the evidence and his own experience, the special master estimates said expenses as not exceeding $135,000. He submits the following statement:

"In considering the assets and liabilities of this association, and the probable anticipatory dividend, it is well to strike from the column of assets the value placed therein upon the items of loans on stock, and to strike from the column of liabilities the amount which was paid in on the stock pledged to secure this loan; making allowance for the fact that some of this stock is not pledged for as much as was actually paid in on the stock so pledged, and that that stock will be entitled to a dividend after paying the loan. In making allowance for this, it is probably proper to strike from the list of liabilities $100,000, instead of $114,215.40, which is the amount paid in on the stock so pledged. This would make the estimated value of the assets of the association for this purpose $436,859.93, and the liabilities $469,005.47. From the assets there should be deducted the amount of estimated expense of winding up the affairs of the association. These expenses will necessarily be heavy, because of the nature of the assets of the company, the places where located, the expense of foreclosure, and the time to be consumed, and the various and many expenses attendant, which are now unforeseen and which may never arise; but provision must nevertheless be made for their possibility, and which I have heretofore placed at not exceeding the sum of $135,000. This leaves $301,859.93 to be distributed to the $469,005.47 of liabilities, which is about sixty-five per cent. Owing to the possibility of error in these calculations, both as to allowing too much for assets and too little for expenses and liabilities, I find that the anticipatory dividend to be allowed in accordance with this report should be thirty-

two per cent. of the amount paid into the loan fund by the borrowing members."

It is to be noticed that as a result the special master, after liberal deductions for bad loans and insufficiently secured loans, and after making a very liberal estimate for expenses of administration, finds that there will be realized for distribution the sum of $301,859.93. It may be that this conclusion is an overestimate, but it is to be hoped, in the interest of the beneficiaries, that it is the reverse. For the matter in hand, however, I assume it to be substantially correct.

From the evidence in the case, and such other facts as have reached me on investigation, a substantially fair estimate of the obligations of the association which will be entitled to share pro rata in the decree of distribution is as follows:

| | |
|---|---:|
| Par value of paid-up stock | $  3,505 |
| Par value of full-paid stock | 134,100 |
| Withdrawal value class A stock | 450,000 |
| Withdrawal value class B stock | 3,124 |
| Withdrawal value class C stock | 721 |
| Withdrawal value class D stock | 2,285 |
| Making a total of | $593,735 |

It results that on the basis of the master's estimate of the fund which will be collected for distribution, and the above estimate of obligations to participate pro rata in the distribution, a dividend of 50 per cent. can be made when the assets are all collected. The strictly correct rule to follow in winding up this association would undoubtedly be to first collect all the assets, and then distribute; but in view of the fact that the eventual distributees are nearly all debtors, and from the peculiar contracts between the association and its members there is an inchoate equity in each case, and considering further that, until that equity is taken into account, few, if any, collections can be made without litigation involving great delay and much expense, I am of opinion that it is to the interest of all stockholders, borrowing and not borrowing, to fix an anticipatory credit or dividend which the receiver may allow in all cases where collections are made without litigation and without unnecessary delay, and that that credit or anticipatory dividend should be fixed at 50 per cent. of the withdrawal value of the stock involved on the 3d day of April, 1900. It is not to be understood that the allowance of this anticipatory dividend is a matter of right or even strict equity, but rather as a compromise to aid in the speedy collection of the assets. If it is accepted by the borrowing stockholders, I am satisfied it will result in advantage to all concerned, and will give a larger dividend in the final decree than will follow if the receiver is compelled to resort to litigation. If the allowance is not accepted, the fund will be in no worse condition, because the receiver has been authorized to deal fairly—perhaps more than fairly—with the borrowing stockholders. A decree will be entered in accordance with the views herein expressed.