[No. 14197.   Department Two.   January 19, 1918.]

Frank Huber, *Respondent*, v. Home Savings & Loan Association, *Appellant*.[1]

Building and Loan Associations—Stockholders—Withdrawal. Upon the withdrawal of a stockholder from a building and loan association, he must stand his *pro rata* share of any loss incurred, as determined by the financial condition of the association and the laws in force at the time of the withdrawal; in this case, Laws 1913, p. 326, Rem. Code, § 3601-1 *et seq.*, and not the act of 1903, since the saving clause of the former act, Id., § 3601-26, has reference only to existing obligations of any association.

Same. Notice of the withdrawal of a stockholder from a building and loan association, being for the benefit of the association, may be waived.

Tender—Sufficiency. There is in effect a tender where money due was exhibited and an offer made to pay the amount then admitted to be due, and any tender refused, as the refusal waives formalities.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered January 5, 1917, upon findings in favor of the plaintiff, in an action to recover on a stock certificate of a loan association, tried to the court. Reversed.

*G. E. Steiner*, for appellant.

*John Burton Keener*, for respondent.

Morris, J.—Respondent brought this action, as a member of the appellant association, to recover the sum claimed due him upon the shares of stock held by him. The lower court found that he was entitled to recover $800, together with interest and dividends in the sum of $27.20, less a charge of $1 per share chargeable as expense under § 5, ch. 116, Laws of 1903, p. 219 (Rem. & Bal. Code, § 3631), resulting in a judgment for $707.20, from which appeal is taken.

[1]Reported in 169 Pac. 979.

Respondent, on March 28, 1907, subscribed for twenty shares of stock in the association, and between that date and April 14, 1908, he paid $1,690. In addition, there was credited to him in the way of dividends and interest to January 1, 1911, $362.40, making a total credit on that date of $2,052.40. The findings of the lower court take no account of this $52.40, but inasmuch as the lower court entered judgment upon plaintiff's contention that the utmost due him was the sum of $2,000, it must have been considered, as contended by appellant, that respondent had received that amount. In February, 1912, and January, 1913, dividends aggregating $200 were paid to appellant. In July, 1913, acting under ch. 110, Laws of 1913, p. 326 (Rem. Code, § 3601-1 *et seq.*), an inspection was made of the affairs of the appellant by the state inspector of savings and loan associations, at which time the company was found to be insolvent, the insolvency growing out of its custom of paying its expenses out of cash on hand and crediting itself for the expense items so paid out, so that, upon the books of the company, an expense account of $2,194.61 appeared as an asset. This condition being brought to the attention of the state inspector, the association was given twenty days' notice under the law to restore its affairs to a safe and sound financial condition or be reported to the *Attorney General* for liquidation. After consultation and deliberation as to the best course to be pursued, it was determined to make a charge of thirty per cent against each share of stock, which, with the aid of a number of fines, would be sufficient to offset this expense account erroneously carried as an asset. The respondent, having twenty shares of stock, was charged with $600, which was placed against his book credit of $2,000, leaving a balance to his credit in the sum of $1,400. Thereafter respondent withdrew $1,200, leaving a credit of $200 on the books of the association, which was the condition of the plaintiff's account in July, 1915, at the time the association was reorganized. Thereafter respondent demanded as

his due $800, the difference between the par value of his stock at $2,000 and the $1,200 withdrawn by him. This amount being refused, he commenced this action.

Respondent's rights are those of a withdrawing stockholder. In exercising this right he cannot escape his just proportion of loss incurred by the insolvent association, but must bear his proportionate share of such loss and take only his *pro rata* share of its assets. 4 R. C. L. 356 (15); 9 C. J. 942. The inquiry then is, after charging respondent with his *pro rata* share of the indebtedness of the association, what was the withdrawal value of his stock? It is not disputed that, if properly chargeable to respondent, the amount chargeable against him would be $600, which would make the withdrawal value of his stock $1,400, of which he had already received $1,200, to which must be added any accumulated interest, admitted to be the sum of $8 at the time respondent commenced this action.

The withdrawal value of respondent's stock is not to be determined by the act of 1903, but by chapter 110, Laws of 1913, p. 326 (Rem. Code, § 3601-1 *et seq.*); the saving clause of the latter act as found in § 26, p. 344 (Id., § 3601-26) having reference only to existing obligations and contracts of any association. The lower court was in error, therefore, in assuming that respondent's rights were to be determined by the act of 1903, rather than by the act of 1913.

The withdrawal value of the stock must be determined by the financial condition of the association and the laws in force at the time of the withdrawal, under which each share of stock is chargeable with its *pro rata* share of loss. This act also provides for notice of withdrawal, but appellant's contention of no notice is not well taken, since the purpose of the notice, being for the benefit of the association, it may be waived by payment without objection on the ground of lack of notice. *Reitz v. Hayward*, 100 Mo. App. 216, 73

S. W. *374*; *McKenney v. Diamond State Loan Ass'n*, 8 Houst. (Del.) *557*, 18 Atl. 905.

Respondent admits that, prior to the commencement of the action, Mr. Pierce, representing the appellant, came to him and, exhibiting the money, offered to pay the amount then admitted to be due, but that he then refused to accept any tender; this was, in effect, a tender. Whatever may have been lacking in formality on the part of Mr. Pierce in making the tender was waived by respondent's refusal to accept any offer or tender.

The judgment of the lower court is reversed, and cause remanded with instructions to enter judgment for respondent in the sum of $208; costs to appellant.

ELLIS, C. J., MOUNT, CHADWICK, and HOLCOMB, JJ., concur.