## In re PUGET SOUND SAVINGS & LOAN ASS'N.

### No. 31632.

District Court, W. D. Washington, N. D. April 4, 1931.

McBurney & O'Brien, Byers & Byers, and A. J. Westberg, all of Seattle, Wash. (Leopold M. Stern, of Seattle, Wash., of counsel), for petitioners.

Lewis & Black and Colvin & Rhodes, all of Seattle, Wash., for alleged bankrupt.

John H. Dunbar, Atty. Gen., of Washington, and Greene & Henry, C. E. Gates, Miller & Weiss, and Moore & Higgins, all of Seattle, Wash., for objectors to petition.

Caldwell & Lycette, of Seattle, Wash., amici curiæ, for temporary receiver.

Grinstead, Laube, Laughlin & Meakim, of Seattle, Wash., amici curiæ, for Washington Savings & Loan League.

NETERER, District Judge.

In this memorandum the alleged bankrupt will be referred to as the saving and loan association.

Involuntary adjudication in bankruptcy is sought by three shareholders and one intervening shareholder of the alleged bankrupt, alleging payment of money within three years, that over withdrawals and offsets there remains $2,063.54, $1,698.94, $5,350, and $98.10, respectively; that the said association is insolvent and within four months next preceding committed an act of bankruptcy when a "receiver was put in charge of its property" by the state court. Objections and answers have been filed by the alleged bankrupt, and many shareholders, and by the re-ceiver as amicus curiæ, and a memo brief by the Washington Savings & Loan League as amici curiæ, a voluntary group representing savings and loan associations operating under the laws in this state.

The association, receiver, and appearing shareholders deny petitioners are creditors, and all parties deny insolvency. The association admits its capital is impaired, and that it was in an "unsound condition within the meaning of the statute," and upon this admission the receiver was appointed. At bar it is stated that there are 27,000 share-holders, and between fourteen and fifteen million dollars in assets, and an impairment of approximately $2,000,000. The issue now submitted is whether the petitioners are cred-itors, and, if so, was the appointment of a receiver an act of bankruptcy?

On February 7, 1931, the board of direc-tors of the savings and loan association, act-ing within its powers, passed a resolution that no withdrawals of shares be permitted, un-less previous notice be given, and only then on further order of the board.

The basic principle underlying the meth-ods and business of savings and loan associa-tions under the Washington statute is mutu-ality. The purpose is to create a fund by pe-riodic payments by its members. It has no function save to gather contributions to jus-tify loans to such of its members as desire to avail themselves of the privilege. Payments made by members "at any time shall be deemed to be the authorized capital." Laws of Washington 1925, pp. 397, 398, § 1 (g). Each petitioner signed a membership card "consent (ing) to the rules, regulations and by-laws." The passbook issued to each share-holder, as evidence of the holder's shares, has this provision, "The holder of this passbook is subject to the rules and regulations appear-ing herein and to the by-laws of this associ-ation," and the following: "The legal holder of this passbook owns one-one hundredth part of a paid up share of the capital stock of the association for every dollar standing to his or her credit on the books of the association, subject to the by-laws." A statement as to withdrawals and that money paid for credit of a member "on or before the fifth of the month will earn dividends from the first day of the month. In January and July this date is extended to the fifteenth, * * *" and statement as to juvenile accounts.

The shareholders are a collection of indi-viduals united under a collective name, shar-ing equally profits and losses, and enjoying

privileges and immunities in their collective character which do not belong to the individuals composing it. The entire membership composes a distinct entity. See City of Los Angeles v. State Loan & Trust Co., 109 Cal. 396, 42 P. 149; Wells v. Black, 117 Cal. 157, 48 P. 1090, 37 L. R. A. 619, 59 Am. St. Rep. 162. The relation is sui generis. It has been styled a corporate copartnership. Towle v. American Building, Loan & Inv. Co. (C. C.) 61 F. 446. The policy of the state in its provision for savings and loan associations is to promote the general welfare by accumulation of the "small savings belonging to the industrious and thrifty." Mercantile Nat. Bank v. New York, 121 U. S. 138, 7 S. Ct. 826, 838, 30 L. Ed. 895. Any person may become a shareholder on approval of his application and payment of the membership fee and dues. The membership of the association shall consist of those holding shares. Section 3720, Rem. Comp. Stat. Minors may hold shares free from the control of lien of all other persons (section 3721, Rem. Comp. Stat.), and shares held by members shall be free from taxation (section 3732, Rem. Comp. Stat.). A contingent or reserve fund equal to 5 per cent. of its capital must be maintained (section 3721); when losses exceed the contingent and reserve fund and undivided profits, the director of efficiency may proceed to wind up the affairs of the association as provided by section 3729, Rem. Comp. Stat. No cause of action is saved to the shareholders, as such, by the provisions of, the statute.

■ No "demand" or "commercial checking account" shall be carried, nor shall any savings account be received without issuing shares of stock for the same. Section 3727, Rem. Comp. Stat. The term "deposit" or "depositor," when used, must be considered in the sense of operation of the association, since the "deposits" furnish the only capital which is invested and employed. Bank of Redemption v. Boston, 125 U. S. 60, 8 S. Ct. 772, 31 L. Ed. 689; Aberdeen Savings, etc., Ass'n v. Chase, 157 Wash. 351, 289 P. 536, 290 P. 697.

A distinguishing difference between a savings and loan association and a commerical corporation is that a shareholder of a savings and loan association has a right to withdraw (section 3755, Rem. Comp. Stat., and bylaws of the association) by giving notice of withdrawal and be relieved from further payments (Merchants' Nat. Bank v. Continental Building & Loan Ass'n (C. C. A.) 232 F. 828), and on demand for payment of matured shares the collective relation is severed, and that of debtor and creditor created.

It is obvious that petitioners, as shareholders, bear the same relation to the corporation and general creditors, except as to earned dividends, as does a shareholder, or stockholder in a commercial corporation. After general creditors are paid, a stockholder in a commercial corporation and in a savings and loan association is entitled to his distributive share of the assets of the corporation. Sections 3277 and 3721, Rem. Comp. Stat. Each is entitled to his pro rata portion of its assets. Huber v. Home Savings, etc., Ass'n, 99 Wash. 593, 169 P. 979.

A "creditor" is one who has a "claim provable in bankruptcy." Section 1a (9), Bankruptcy Act, 11 USCA § 1 (9). If claims in issue are provable debts under the Bankruptcy Act, it must be (section 63a (4), 11 USCA § 103 (a) (4) "founded upon an open account, or upon a contract express or implied." It is obvious that it is not an open account, and upon the record and statute, the only contractual relation is statutory, and until the withdrawal or demand on matured shares there is no obligation to pay. A method of payment is specifically provided: " * · * * Shares may be withdrawn at any time after one year from the time of issuance. The withdrawing shareholders shall be paid the amount of withdrawal value of the shares, as shown by the last prior distribution of profits, together with all dues paid thereon since such distribution. * · * * Withdrawals shall be paid in the order of their filing * * * not more than two-thirds of the receipts of the association in any one month shall be applied to the payment of withdrawals and matured shares without the consent of the board of directors. Whenever an application for withdrawal shall have been on file or the payment of matured shares demanded, and either shall have remained unpaid for a period of six months, all receipts of the association in any one month from dues, loans repaid and the proceeds of all other investments shall, after the payment of expenses and general indebtedness be applied to the payment of withdrawals and matured stock, and the board of directors, or the state auditor (director of efficiency), in his discretion may direct that withdrawals be paid upon a ratable and proportionate basis. * * * *"

The contract was fully executed; the membership fee and capital stock paid, and certificates, or passbooks, issued. Nothing remained but to await the fruits of the investments, "profits and losses," profits to be paid June 30 and December 31 of each year. Section 3722, Rem. Comp. Stat.

Before a right of action accrues to the shareholder, notice of withdrawal must be given and demand for matured shares made, and money be in the treasury, as provided by section 3731, and the directors withhold payment. Heinbokel v. Nat. Savings, etc., Ass'n, 58 Minn. 340, 59 N. W. 1050, 25 L. R. A. 215, 49 Am. St. Rep. 519; Stilwell v. People's, etc., Ass'n, 19 Utah, 257, 57 P. 14.

The Circuit Court of Appeals of the Fifth Circuit, in Curtis v. Dade County Securities Co., 30 F.(2d) 325, 326, in passing upon a Florida statute similar to the Washington statute, said: "Rights possessed by one by reason of his relation to a corporation as a stockholder do not make him a creditor of the corporation, and liabilities of a corporation to its stockholders on account of their stock are not debts of the corporation, within the meaning of the above-quoted provision [referring to the Bankruptcy Act, § 1a (15), 11 USCA § 1 (15)]." And further in the same case said: "But, whether appellants did or did not, as between themselves and the Company or its other stockholders, have the right to withdraw what they had paid in on their stock, their claims, based on their relation to the Company as stockholders, are not 'debts' within the meaning of the above set out provision of the Bankruptcy Act."

A stockholder, as such, is not a creditor of the corporation whose stock he owns. In re Eureka Anthracite Coal Co. (D. C.) 197 F. 216; Cook et al. v. Emmet Perpetual & Mutual Building Association of Baltimore, 90 Md. 284, 44 A. 1022; Hannon v. Williams, 34 N. J. Eq. 255, 38 Am. Rep. 378; Missouri Valley Cattle Loan Co. v. Alexander (C. C. A.) 276 F. 266; Curtis v. Dade County Securities Co., supra.

The shareholders are bound by the statutory provisions and by-laws not inconsistent with the statute. Columbia Building, etc., Ass'n v. Junquist (C. C.) 111 F. 645; Heinbokel v. Nat., etc., Ass'n, supra; Stilwell v. People's, etc., Ass'n, supra; Kent v. Quicksilver Min. Co., 78 N. Y. 159. In this case the shareholders, under a special declaration, hold one one-hundredth part of a paid up share of the capital stock of the association for every dollar paid, emphasizing the collective corporate status. That a shareholder is not a creditor by the terms of the statute is obvious by section 3742, Rem. Comp. Stat., which provides, among other things, that, after paying indebtedness the assets reduced to cash shall be distributed among the shareholders—clearly distinguishing between creditors and shareholders. In section 3755, Rem. Comp. Stat., upon conversion of a savings and loan company into a mutual savings bank, it provides that every person who was a shareholder shall become a depositor of the bank equal to the withdrawal value of his share in the savings and loan association, specifically providing that a shareholder in the savings and loan association shall become a creditor of the savings bank on conversion—emphasizing the distinction between shareholders and creditors in both sections.

While many shareholders are denying the petitioners are creditors, that has no determining force on the legal status and right of the petitioners. It is, however, a circumstance to be considered as to the construction and conduct of a substantial number of shareholders, related as petitioners. By statute the state governs the operation of savings and loan associations. The statute fixes the relation and establishes the right of shareholders and prescribes the duties and limits the powers of the managing officers (Home Building & Loan Ass'n v. Barrett et al., 160 Mo. App. 164, 141 S. W. 723), and clothes with ample power specially charged officers with the duty to see that the laws are carried into effect, and whenever the affairs of the association are in an "unsound condition"—when the losses exceed the contingent and reserve funds and undivided profits—"the director of efficiency may direct the inspector of savings and loan associations to take possession," and if the affairs of the association are not restored to a sound condition within twenty days, the Attorney General shall institute proceedings in the state court for the appointment of a receiver. In furtherance of the express statutory provision, the Attorney General, as the statutory agent of all the shareholders by operation of law, and the instrumentality of the state, and pursuant to statute, sued in the state court and had a receiver appointed on the ground that the association is in an unsound condition; and the estate is now in process of liquidation in the state court. Query: May petitioners, if otherwise qualified, maintain their petition after institution by the Attorney General of the proceedings in the state court and placing the estate under liquidation? See In re Commonwealth Lbr. Co. (D. C.) 223 F. 667.

Merchants' Nat. Bank v. Continental Build. & L. Ass'n (C. C. A.) 232 F. 828, claimed by petitioners to be decisive of this issue, is not in point. The California statute is not set out, but was no doubt controlling.

Curtis et al. v. Dade County Securities Co., supra, is strictly in point and based upon the Florida statute (section 6168, Compiled General Laws of Florida 1927, vol. 3), in all material respects like the Washington statute (section 3731, Rem. Comp. Stat.), and the court, passing directly upon the point in issue, held that a shareholder in the association has no enforceable right to withdraw until the accrual of a fund applicable to withdrawing shareholders; and affirmed the order of dismissal.

In Merchants' Nat. Bank v. Continental, etc., Ass'n, supra, the issue at bar was not before the court. The order of adjudication had been entered upon a voluntary petition. No objection was made to the court's jurisdiction by any one at any time. The assets were many times the indebtedness. The appellant, a general creditor, rightly claimed priority over the distributing shares of the shareholders, at a meeting of the creditors moved that shareholders of the bankrupt be denied the right to vote, upon the ground that they were not creditors. This was denied, and when appellant endeavored to vote he was asked by the referee whether he waived his preference as a general creditor, and, failing, was denied the right to vote. The court, at page 830 of 232 F., said: "Petitioner is scarcely in a position to urge serious harm," and on page 832 of 232 F., " * * * no possible harm was done to the appellant by denying it the right to vote for a trustee, it has no cause for complaint." At page 831 of 232 F.: "Building and loan associations are at once distinguishable from ordinary commercial corporations. In building and loan corporations, where the capital stock consists of the dues paid in by members, together with the apportioned profits, the shareholder has a right to withdraw at any time from the association and to receive what has been paid in plus his share of the profits earned and minus the penalties imposed for withdrawal, without being compelled to complete his stock subscription." The court says, "has a right to withdraw" and be paid, irrespective of money accrued to meet payment? This was evidently in accord with the California statute, and in this it is radically different from the Washington statute. See section 3731, supra.

 A shareholder may be, also, a creditor, and his right, to the extent that he is a creditor, may not be denied. A shareholder under the Washington statute is entitled to the computed dividends taken from the net earnings, to be paid at stated times, and to that extent he is a creditor. Payments made by him are capital; computed dividends taken on the payments is a credit.

The Court of Appeals recognized that a procedure in bankruptcy is in the nature of a proceeding in equity. Bardes v. Hawarden First Nat. Bank, 178 U. S. 524, 535, 20 S. Ct. 1000, 44 L. Ed. 1175, and affirmed the order of the lower court, which, in good conscience, should have been done, in view of all of the circumstances, and absolutely no harm to the objecting general creditors, and disposed of the case by the application of good common sense to the issue before it. In Alexander et al. v. Southern Home, etc., Ass'n (C. C.) 110 F. 267, Judge Pardee held that holders of paid up stock, or stockholders who gave notice of withdrawal before the receivership, were transformed to creditors.

The disenablement of the association, by the appointment of a receiver in the state court from carrying on, did not change the legal status or relation of the petitioning shareholders, and in that this case is clearly distinguished from Central Trust Co. v. Chicago Auditorium, 240 U. S. 581, 36 S. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580, where the disablement from performing an executory contract constituted a breach, and the cause of action accrued and made the demand actionable and, therefore, provable in bankruptcy; while here, there was no executory contract, and the petitioners had no enforceable right disclosed in the petition (cases supra), and they are on an equal status and relation with (so stated at bar) 27,000 shareholders, and are entitled to their proportionate distributive share after general indebtedness is paid.

The issue at bar has never been directly considered by the Supreme Court of the state, as contended by the petitioners. Interstate S. & L. Association v. Cairns, 16 Wash. 215, 47 P. 509; Interstate S. & L. Association v. Knapp, 20 Wash. 225, 55 P. 48, 931; Hale v. Stenger, 22 Wash. 516, 61 P. 156; U. S. S. & L. Ass'n v. Parr, 26 Wash. 115, 66 P. 109, involve payments pertaining to accounting with relation to mortgages and payment of dues, fines, penalties, etc., and not predicated upon the present law, and its relation to the savings and loan system.

Time does not permit a detailed analysis and would unduly extend this memoranda. Huber v. Home Savings & Loan Ass'n, 99 Wash. 593, 169 P. 979, and Aberdeen Savings & Loan Ass'n v. Chase, supra, were upon other independent issues, and what was said with relation to debtor and creditor of savings

and loan association shareholders was merely incidental, perhaps loosely expressed, which cases are cited in support of some statements herein made, but cannot be considered as at all authority in support of the petitioners, in view of the expressive language employed in the state statute, supra. Savings Bank of Danbury v. Loewe, 242 U. S. 357, 37 S. Ct. 172, 61 L. Ed. 360, holds that a deposit in a savings bank account held for investment is a vested right, and under the attachment statute of Connecticut, section 936, Gen. St. 1902, reaches the share and earnings. So concluding, the alleged act of bankruptcy will not be discussed.

The petition does not disclose any relation of debtor and creditor under the Bankruptcy Law, and the petition is dismissed.