**CZECH CATHOLIC UNION, Plaintiff, v. SATLA REALTY CORPORATION et al, Defendants.**

Common Pleas Court, Cuyahoga County.

No. 608345.

Harold K. Bell, Spieth, Spring & Bell, Cleveland, for plaintiff.
John Lansdale, Jr., Squire, Sanders & Dempsey, Cleveland, for defendants.

## OPINION

By KOVACHY, J:

In this memorandum the Atlas Savings & Loan Company will be referred to as Atlas and the Satla Realty Corporation as Satla.

The Atlas went into voluntary dissolution in 1930 and continued liquidation of its assets under and by virtue of applicable sections of the General Code of Ohio.

In March of 1935 its directors applied to the Common Pleas Court of this County for the right to accept balances due upon pass books towards the purchase of real estate and towards the payment of rents under a special formula.

From that time until September of 1939, the Common Pleas Court of Cuyahoga County adjudicated many problems presented to it by said directors in connection with the liquidation of said company. In September, 1939, this Court issued an order which in effect wound up the affairs of the Atlas Savings & Loan Company and authorized the formation of a new company, incorporated under the General Corporation Laws of the State of Ohio, to be known as the Satla Realty Corporation.

At the first meeting of the Board of Directors of Satla on December 11, 1939, the following resolution was unanimously adopted:

"It is not only the intent of the board to liquidate the assets of Satla as speedily as possible but they are duty bound to do so to enable the present shareholders, who are mainly the former depositors, to obtain their funds as speedily as possible. Furthermore, it is the formal declaration of the present directors, even though the Satla Realty Corporation was organized as a going concern, to consider it only as a liquidating medium."

Pursuant to such resolution, the directors proceeded to liquidate the assets of said Satla and to pay off the claims of the former depositors of Atlas.

On June 1, 1950, when all the claims of said former depositors had been paid, an amendment to the Articles of Incorporation was passed at a meeting of the shareholders of Satla by a vote in excess of two-thirds (2/3) of the shareholders of said corporation empowering Satla to carry on a mortgage investment business, and in some instances before said amendment the company did engage in and deal with new business in the form of mortgage loans on real property.

The plaintiff in its amended petition in this cause, and the defendant, Charles J. Hronek, in his cross petition, pray that the defendant company, Satla, and its board of directors "be enjoined from operating said defendant corporation as a mortgage investment corporation; that the action taken at the said shareholder's meeting on June 1, 1950, be declared illegal and void; that the defendants be enjoined from investing any accumulations held by the defendant corporation, The Satla Realty Corporation, in any mortgage or other investment; that said directors be ordered to pay out $60,000.00 of the defendant corporation's cash accumulations in distribution to the shareholders of the defendant corporation; that the defendants be restrained from doing all acts other than the continued liquidation of the remaining assets of the defendant corporation, Satla Realty Corporation; that the defendant directors be ordered to continue said liquidation in as efficient, economic, and rapid manner as possible; that defendants be ordered to sell or otherwise dispose of the remaining assets of defendant corporation so as to permit a cash distribution to the plaintiff and other shareholders of defendant corporation; that plaintiff be awarded reasonable attorney's fees and the costs of this suit; and for such other and further relief as may be deemed just and equitable and necessary for the protection of plaintiff and all other shareholders of the defendant corporation."

The Court has studied the full history of the dissolution phase of Atlas as well as the records of the operation of Satla

to date and it seems to it that. the issues raised in the cause can be narrowed down to one paramount issue:

WAS SATLA ORGANIZED AS A GOING CONCERN WITH POWER TO ENGAGE IN BUSINESS ACCORDING TO ITS GENERAL "PURPOSES" ARTICLE OR WAS IT ORGANIZED ONLY AS A MEDIUM TO LIQUIDATE THE REMAINING ASSETS OF ATLAS?

A thorough and careful analysis of the application filed June 7, 1939 in cause No. 423646 of the Common Pleas Court of Cuyahoga County, the Journal Entry in the same cause filed September 5, 1939, and the Articles of Incorporation of Satla was necessary to resolve this issue. The "Plan," as set forth in said application, it appears, was a proposal to settle the claims and rights of all parties having any interest whatsoever in the liquidation of Atlas. Its fundamental objective was to terminate the jurisdiction of Common Pleas Court in the liquidation of Atlas by winding up all of its affairs by means of the formation of a new corporation, to which all assets remaining in Atlas would be transferred and which was to be controlled in the main by the depositors of Atlas ($50.00 or more) through the issuance of common stock to them in proportion to their claims against Atlas. The consent of all to the plan was necessary for fruition. Such consent was obtained and the "Plan" thereupon became an agreement binding upon one and all when formalized in said Journal Entry.

"That all stockholders, depositors and other creditors of said dissolved corporation, and all other parties in interest, are properly before the court." J. E. Case No. 423,646, P. 10.

"That no stockholder, depositor or other creditors of said dissolved corporation, other than Josephine Houska, a depositor, has filed herein any pleading, and that all other stockholders, depositors, and other creditors are in default for motion, demurrer, answer or other pleading to said application, and that the objection filed by the said Josephine Houska was withdrawn at the hearing." J. E. Case No. 423,646, P. 10.

The backbone of the "Plan" was the formation of Satla. It embraced these provisions as to Satla:

1. Incorporation as a new company under the General Corporation Laws of the State of Ohio.

2. Authorized capital stock of a sufficient number of shares to permit a distribution of one share for each $20.00 of the remaining depositors' claims, and one share for each twenty shares of stock of Atlas, 4300 in all.

3. Par value of $1.00 per share.

4. Transfer of all Atlas assets to it.

5. All of its capital stock to be turned over to the directors of Atlas.

6. Inclusion of provisions in its Articles and Regulations, which will permit the stockholders of said new corporation to exchange capital stock to be delivered to them for real estate to be acquired by said new corporation at prices not less than 120% of the appraised value of such real estate, and authorize the board of directors of said new corporation to accept the stock of said new corporation in the payment of rentals, upon such basis as the board of directors may deem proper and reasonable.

7. Directors of Atlas to serve as directors of Satla until the first annual meeting of stockholders.

8. Assumption and agreement to pay all indebtedness of the claims, made or assessed against said dissolved corporation, the officers, or directors thereof, whensoever arising.

(The claims of the depositors of Atlas were the only ones remaining.

"We don't owe anyone with the exception of our depositors." J. E. Case No. 423,646, P. 3.

Upon the adoption of the plan, some $45,000.00 was to be borrowed by the defendant Atlas to pay the depositors' claims of $50.00 or less, which of course was to become a lien upon the assets of Atlas.)

9. Under the control of the depositors of Atlas.

"This Court is a believer in the system that the control of all companies as far as possible should be out of the hands of the Court. The Court wants to see, wherever it is possible, a company to go along on its own power, on its own motion, if it can do so. This company should be in the hands of the depositors. The Court should be divorced of these matters." J. E. Case No. 423,646, P. 7.

"Coming to the first proposition about the Court retaining control, the Court is very glad to relinquish control. The Court feels it is about time. The Court feels that this company is now in a position where it can stand on its own feet. It doesn't need the help of the Court any longer." J. E. Case No. 423,646, P. 8.

"The company should go back where it belongs. The Court will relinquish control of it. These people should take charge of their own institution. It is in perfectly liquid form. It can carry on." J. E. Case No. 423,646, P. 9.

Upon holding the first annual meeting of stockholders of Satla on the 4th day of December, 1939, every provision required by the "Plan" with respect to Satla enumerated above was carried out. The purposes of Satla and its powers with

respect to such purposes were now to be found in the charter given it by the State of Ohio as prescribed in its Articles of Incorporation.

"It is said that the power of a corporation depends on its charter, and the laws of the state where it is organized; * * *." **10 O. Jur 814, Sec. 605.**

"The rights of a corporation under its charter are such only as are conferred explicitly by its terms." 12 Amer. Jur. 218.

"The powers of a corporation are dependent upon the grant of the sovereign power, and it is well settled that a corporation has only such powers as are expressly .granted in its charter or which are necessary for the purpose of carrying out its express powers and the purpose of incorporation. A corporation has no natural rights or capacities * * * and if a power is claimed for it, the words giving the power or for which it is necessarily implied, must be found in the charter or it does not exist." 7 R. C. L. Sec. 512.

Whether Satla, therefore, was organized as a going concern with powers to engage in business according to its general "purposes" article, or was organized only as a medium to liquidate the remaining assets of Atlas, must be determined from the wording of its Articles of Incorporation.

"The rule has been repeatedly stated by Ohio Courts to the effect that a private corporation can exercise no powers except such as are expressly given it by its charter, or such as are necessary to carry into execution those powers conferred by express provision, and that they cannot legally enter into transactions which require the exercise of other powers, but may legally do only those acts set forth in its articles of incorporation as constitute its authorized purposes; that the enumeration of these powers implies the exclusion of all others. No court in this country, it has been declared, has been stricter in enforcing this principle, that corporations have only powers which are expressly conferred upon them by their charter and such as are fairly incidental to those powers, than the Supreme Court of Ohio." **10 O. Jur. 816, Sec. 606.**

The articles of incorporation of a private corporation, together with applicable laws of the state, constitute a contract between the state, the corporation and the holders of stock.

"The charter of a corporation constitutes a contract between it and its stockholders, and also between the stockholders inter se * * *." **10 O. Jur. 164, Sec. 95.**

The same rules of interpretation and construction therefore apply to the language used in it as are applicable to similar words in any contract.

"Ohio courts * * * have * * * applied, in the construing

of corporate charters precisely the same rules of construction that would be applied to similar words and language in any other contract or statute, construing them according to plain reason, and giving to them their natural meaning." **10 O. Jur. 163.**

"Courts, in construing deeds and like written instruments, must be guided by the intention of the parties to them, and this must be determined by the language used in the instrument, the question being not what the parties meant to say, but the meaning of what they did say, as courts cannot put words into an instrument which the parties themselves fail to do." **8 Oh Ap 360.**

Article Third of the Articles of Incorporation of Satla stated that "The purpose or purposes for which it is formed are purchasing, and otherwise acquiring, holding, owning, mortgaging, pledging, selling, transferring and in any other manner disposing of, and dealing in and with, real property and interest therein, and goods, wares, merchandise and other personal property, of any and every class and description and wherever situate, and doing any and all things incident thereto."

Article Sixth defines, limits, and regulates the powers bestowed in Article Third with respect to certain enumerated matters:

1. Shares authorized under Article Fourth to be issued to the directors of Atlas.

2. Satla to assume all claims against Atlas.

3. Permissive right to the board of directors to purchase its outstanding shares and to pay for same by transfer of real property owned by the corporation.

4. Permissive right to the board of directors to accept outstanding shares in payment for rent of real property owned by it.

5. Subject to limitations upon the corporation to purchase its own shares set forth in the articles of incorporation or from time to time provided by law, a shareholder, subject also to reasonable regulations of the board, shall have the right to purchase real property and pay for same by transferring and assigning to the corporation, any of its outstanding shares.

6. Formula for determining the value and price of any such shares involved in transactions of the nature and kind mentioned.

Article Sixth also refers to the decree in cause No. 423,646, but said decree is not incorporated as a part of the article. The purpose of such reference, by the clear language used, is to identify and also to disclose the inclusion within these

articles of provisions specifically required by the mandate of said decree.

The wording of Article Sixth is unequivocal, unambiguous and definite. It requires no interpretation or construction for its meaning is clear. The general powers of the corporation are limited only with respect to the matters specified. The general powers set forth in Article Third have not suffered impairment except as to the things set forth in Article Sixth.

The word liquidation does not appear anywhere in the articles of incorporation. Article Sixth provides that Satla acquire all the assets of Atlas "subject to all indebtedness of, all claims or asserted against said dissolved corporation * * *." Moreover, the par value of a share was made $1.00.

"The par value of a share is simply an amount fixed as the nominal value of the interest so specified, which amount likewise indicates the sum of money or value of property or services which a subscriber is represented as having contributed to the corporation in exchange for such share in its ownership." 13 Amer. Jur. 301, Sec. 176.

"Stockholders are not creditors of a corporation as that word is generally understood." 254 Michigan, 242 Syl. 81.

"A share of stock is not a credit nor a debt owing by the corporation to the stockholder in the sense in which the term is generally used." Fletcher Cyclopedia Company, V. 11 P. 84.

"The corporators in the aggregate own the stock according to their respective shares and portions, and it can no more be said that the share of a corporator constitutes a credit, a debt due to him by the corporation, then it could be said that the joint owners of a house or a ship are the debtors of each for his share." Smith v. Crescent City Line Stock Landing and Slaughter House Company. 30 LA Annual 1380.

If only liquidation was in mind would the depositors have been put in full control of a new company as well as been assured payment of their original claims against Atlas? It is more logical to believe that the depositors in that case would have had Certificates of Participation issued to them as was done in the **Shuster Case, 139 Oh St 315.**

It should be noted in passing that Article Seventh inferentially assumes the right of Satla to issue "shares of any class." Such power is not consistent with the thought of liquidation.

It seems to this court that the over-all object of the formation of Satla was to build a new company upon the ruins of the old, and to permit the depositors, who with their money furnished the life-blood of the old organization, to reap whatever benefits they could from such a transformation since

equitably whatever remained of Atlas rightfully belonged to them.

"Term 'deposit' or 'depositor' used in connection with savings and loan association, must be considered in sense of separation of association, since depositors furnished sole capital." In Re: Pudget Sound Savings & Loan Association. 49 F. 2d 922, Syl. 2.

With the conclusions arrived at, as set forth above, it becomes unnecessary to resolve the other questions raised in the amended petition of the plaintiff and the cross petition of defendant Charles J. Hronek.

Therefore the Court finds for defendant Satla Realty Corporation, Frank E. Jankovsky, Henry J. Cisar, Alex J. Grabski, August Uhl, John R. Weizer, Jr., Anthony T. Jesionowski on plaintiff's amended petition and for the same named defendants on defendant Charles J. Hronek's cross petition.

A Journal Eentry may be drawn accordingly with exceptions noted for plaintiff Czech Catholic Union and defendant Charles J. Hronek.