[No. 42163-8-I.   Division One.   April 19, 1999.]

LE TASTEVIN, INC., ET AL., *Appellants*, v. SEATTLE FIRST
NATIONAL BANK, ET AL., *Respondents*.

*Janet A. Irons* of *Irons & Glass*, for appellants.

*Craig W. Miller* and *Michele Radosevich* of *Davis Wright
Tremain*, for respondents.

Cox, J. — A redemptioner may not toll the statutory redemption period without tendering the sum required to redeem.[1] Likewise, a judgment debtor may not suspend a levy and execution without tendering the amount required to satisfy the judgment that underlies the writ of execution. Because the judgment debtor here failed to tender the amount due to satisfy the judgment, the sheriff was entitled to proceed with the levy and execution sale. We affirm the summary judgment order of dismissal.

The relevant facts are not in dispute. Seattle First National Bank (Seafirst) obtained a judgment against Le Tastevin and Emile Ninaud, one of the principal guarantors of Le Tastevin's obligation to the bank. Prior to the events that are at issue in this action, Seafirst took various steps to partially satisfy the judgment. Ultimately, the bank obtained a writ of execution directing the sheriff to levy and execute against Le Tastevin's personal property. The parties agree that the unsatisfied judgment owed at the time the clerk of the court issued the writ of execution was about $76,000. Although the writ is not in the record before us, the parties agree that it erroneously stated that about $190,000 remained unsatisfied on the judgment, roughly $114,000 more than was in fact owing. The error in the writ was due to a miscalculation by Seafirst. Significantly, there is no claim here that the bank miscalculated the amount in bad faith.

On June 8, 1993, the King County Sheriff, on behalf of Seafirst, levied against Le Tastevin's personal property, consisting of a collection of wine and other restaurant supplies and fixtures. At the time of that levy, Ninaud tried in vain to halt the seizure of the property. To stop the process, he initially offered Seafirst $35,000 and then $50,000. He neither offered to pay nor tendered the $76,000 he believed

---

[1] *Millay v. Cam*, 135 Wn.2d 193, 199, 955 P.2d 791 (1998).

to be due to satisfy the judgment. Seafirst demanded a payment of $150,000 to stop the levy. Ninaud declined to pay that or any other amount. Soon thereafter, the sheriff sold the property at an execution sale.

Thereafter, Ninaud and Le Tastevin commenced this action against Seafirst and the King County Sheriff. The amended complaint stated five causes of action: (1) breach of contract, (2) interference with business expectancy, (3) failure to protect value of seized property, (4) outrage and mental anguish, and (5) failure to apply seized deposits to amount due.

Seafirst moved for summary judgment on the breach of contract and interference with business expectancy claims. It also moved for summary judgment on the outrage claim. The trial court granted both motions. At the conclusion of a bench trial on the remaining issues, the court entered judgment in favor of Seafirst.

Le Tastevin appeals.

Le Tastevin contends that the trial court erred by granting Seafirst's motion for summary judgment and dismissing Le Tastevin's claims for breach of contract and interference with a business expectancy. Both of these claims were based on Le Tastevin's contention that it was excused from tendering the $76,000 unpaid judgment owed to Seafirst because such tender would have been a futile act. We cannot agree with this contention.

■ We may affirm an order granting summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[2] We consider all facts and reasonable inferences in the light most favorable to the nonmoving party.[3] We review questions of law de novo.[4]

---

[2]CR 56(c); *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 220, 802 P.2d 1360 (1991).

[3]*Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994).

[4]*Mains Farm Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 813, 854 P.2d 1072 (1993).

There are no genuine issues of material fact here. Therefore, we must decide whether the bank was entitled to judgment as a matter of law in view of the legal authority governing this situation.

■ RCW 6.17 defines the process by which a judgment creditor may execute on the property of a judgment debtor in order to satisfy an outstanding debt. A party who obtains a money judgment may have an execution issued for enforcement of the judgment at any time within 10 years after entry of the judgment.[5] The statutes expressly direct that the sheriff to whom a writ of execution is issued and delivered shall execute the writ "without delay."[6] The statutes further direct that the sheriff must return the execution "with a report of proceedings under the writ within sixty days after its date to the clerk who issued it."[7] A judgment debtor may obtain a stay of execution by filing a bond in double the amount of the judgment and costs.[8] Although the statutes do not expressly state so, presumably a judgment debtor may also suspend a levy and execution by tendering the amount necessary to satisfy the outstanding judgment and increased expenses associated with the writ process.

In our view, the execution statutes set forth a framework whereby a judgment creditor may promptly satisfy a money judgment by seizure and sale of property of the judgment debtor. The procedure provides safeguards by requiring that the creditor obtain a writ from the court and further providing that the debtor may stay an execution for specified periods upon posting of a bond in the required amount.[9] Moreover, the procedure requires the sheriff of the county

---

[5]RCW 6.17.020.

[6]RCW 6.17.160.

[7]RCW 6.17.120.

[8]RCW 6.17.040.

[9]RCW 6.17.040.

in which the property is located to perform the levy and sale of the property. That the procedure is intended to be fairly expeditious is indicated by the statute's requirement that the process be completed within 60 days from the date of the writ.

We find nothing in the statutes that remotely suggests that a mere *offer* to tender a sum insufficient either to satisfy the outstanding obligation or to stay the execution for a fixed period under the express provisions of the statute is sufficient to halt the process. Rather, the clear intent of the statutes is to allow the levy and execution to proceed unless the debtor pays the outstanding judgment or posts a bond in the proper amount to stay execution for a fixed period of time.

In short, there is nothing in the statutory framework that suggests that tender of the $76,000 unpaid judgment here would have been a futile act. We also note an additional reason why, in this case, tender of the $76,000 unpaid judgment to the sheriff and/or Seafirst would not have been a useless act. By tendering that sum, the parties' rights would have been fixed. Specifically, if Seafirst and the sheriff had proceeded with the levy and execution once the judgment had been fully paid, they would have done so at their peril. A court could have found under those circumstances that proceeding with the process was wrongful and could have granted damages and other relief. In the absence of such a tender, however, the sheriff and Seafirst had no reason to cease following the statutory process for collection.

Le Tastevin argues that the trial court mistakenly relied on *Millay v. Cam*[10] in granting Seafirst's motion for summary judgment. Although we agree that *Millay* arose under the redemption statutes,[11] a different statutory scheme, the

---

[10]84 Wn. App. 369, 928 P.2d 463 (1996), *rev'd on other grounds*, 135 Wn.2d 193, 955 P.2d 791 (1998).

[11]RCW 6.23.

underlying rationale of that case is consistent with the statutory analysis that we have outlined above.

There, Millay attempted to redeem certain property from Cam. But Millay claimed that Cam so grossly inflated its statement of the amount needed to redeem the property that Millay was prevented from paying because he had no way to calculate the sum. Millay paid nothing. Instead, on the last day to redeem, he brought a declaratory judgment action to determine the correct sum required. This court held that the filing of the declaratory action was *not* equivalent to a timely redemption and that Millay should have timely tendered the amount that he thought due in order to preserve his redemption rights. The Supreme Court agreed.[12] Central to the reasoning of the Supreme Court in *Millay* is that the redemption statutes require payment.[13] So do the execution statutes. Thus, the fact that *Millay* involved the redemption statutes and this case involves the execution statutes is of no consequence to our decision.

Because the statutory analysis that we have outlined above is dispositive, Le Tastevin's reliance on the "common law" rule regarding futility is misplaced. In any event, not even the cases that it cites support its proposition.

Le Tastevin relies on *Buell v. White*.[14] But, contrary to Le Tastevin's assertions, *Buell* does not stand for the proposition that one may avoid tendering the amount owed in order to redeem one's property. Instead, it merely holds that where a would-be redemptioner complies with the terms of Colorado's redemption statutes in attempting to tender payment, such actions constitute a tender. Here, by contrast, LeTastevin did not attempt to comply with any statute. It did not post a bond in twice the amount of the judgment amount that it knew to be correct.[15] Nor did it

[12]*Millay*, 135 Wn.2d at 199-204.

[13]*Millay*, 135 Wn.2d at 199.

[14]908 P.2d 1175 (Colo. 1995).

[15]RCW 6.17.040.

tender the amount that it knew to be due on the judgment.

Le Tastevin also relies on *Simmons v. Swan*.[16] There, on the final day to complete payment under a contract, the plaintiff tendered payment, which defendant refused. The Supreme Court held that a directed verdict in defendant's favor was improper because the jury could well have found that that refusal constituted a breach of contract. Here, unlike *Simmons*, Le Tastevin made *no* proper payment or tender that Seafirst declined. Moreover, satisfying judgments by execution is a creature of statute, not contract law. Therefore, the rule in *Simmons*, a contract case, is inapposite.

*Huber v. Home Savings & Loan Association*[17] is also distinguishable. There, a representative of the appellant approached the respondent and, showing the money, offered to pay the amount then due. But the respondent refused to accept any tender. Under those facts, our Supreme Court concluded that there was a tender and that formality requirements were waived by respondent's refusal to accept any tender.[18] Here, in contrast, Le Tastevin did not present the amount of the judgment. It simply *offered* to pay some amount less than the amount owed.

■ Because Le Tastevin's arguments on appeal are limited to the propriety of the grant of summary judgment, the sole issue properly before us is the order granting summary judgment. Therefore, we decline to consider Le Tastevin's assignments of error regarding the findings of fact and conclusions of law entered after the bench trial.[19]

We affirm the summary judgment order of dismissal.

---

[16]275 U.S. 113, 48 S. Ct. 52, 72 L. Ed. 190 (1927).

[17]99 Wash. 593, 169 P. 979 (1918).

[18]*Huber*, 99 Wash. at 596.

[19]*Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

BAKER and BECKER, JJ., concur.