# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| KALEVA and MÄRT LIIKANE, | ) | No. 73641-8-I |
| | ) | |
| Appellants, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF SEATTLE, DEPARTMENT | ) | UNPUBLISHED |
| OF CONSTRUCTION AND LAND | ) | |
| USE, DEPARTMENT OF | ) | FILED: November 7, 2016 |
| TRANSPORTATION; DALY | ) | |
| PARTNERS, LLC; JIM DALY; and | ) | |
| PAVILION CONSTRUCTION, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

Cox, J. – Kaleva and Märt Liikane (the "Liikanes") appeal the superior court's order granting summary judgment to Respondents Daly Partners, LLC and Jim Daly (the "Daly Parties") and dismissing the Liikanes' claims with prejudice. There were no material issues of fact because the Daly Parties acted in accordance with a valid easement agreement. The Liikanes' claims of trespass and various constitutional violations are without merit. Accordingly, we affirm.

Inhabit Dexter, LLC (Inhabit) owned property located at 1701 Dexter Avenue North in Seattle (the "Property"). Kaleva and Kai Liikane (the "Liikane owners") own two parcels adjacent to the Property (the "Liikane property"). The Liikane owners acquired this property on November 8, 2005, when their father, Märt Liikane, gave it to them via a quit claim deed.

As part of some initial development efforts, Inhabit negotiated and executed a Soil Nail Easement Agreement (the "Agreement") with the Liikane owners. The Agreement is dated November 6, 2008, and recorded in King County on December 15, 2008. The Agreement grants the Grantee (Inhabit) the right to install a portion of a temporary shoring system beneath the Liikane property. The shoring system is used to support a temporary retaining wall located on the Property which in turn will support the hillside during construction of a permanent structure on the Property.

The Agreement allows the Grantee to place soil nails/tie backs onto the Liikane property and sets out three restrictions governing the placement of the soil nails as follows:

> Grant of Soil Nail Easement. Grantor hereby conveys and grants to Grantee a non-exclusive construction easement ("Soil Nail Easement") for the sole purpose of the construction, installation, use and abandonment in place, of a series of Soil Nails under and across the east one-hundred fifty (150) feet of Grantor's Property (the "Easement Area"), at **depths of five (5) feet or more** below the existing grade of Grantor's Property as shown on the drawing attached hereto as Exhibit C. The Soil Nails shall not **extend more than forty-five (45) feet** west beyond the eastern boundary of Grantor's Property as shown on the drawing attached hereto as Exhibit C. The Soil Nails will be placed into a soldier pile wall **in the general configuration as shown on Exhibit D.** Upon completion of in [sic] the construction and installation of the Soil Nails, detailed as-built drawings showing the locations, elevations, and dimensions of the Soil Nails shall be provided to Grantor.[1]

The Agreement also specifies that before entry onto the Liikane property, the Grantors (Liikane owners) must be paid $2,000, and the Grantee has to have obtained insurance and provided the Grantor with evidence of the same. The

---

[1] Clerk's Papers at 188-89 (emphasis added).

2

Agreement is binding on both parties' successors, transferees, and assigns, and provides that the Grantee could assign the Agreement without the consent of the Grantor.

Attached to the Agreement are Exhibits C, D, and E. Exhibit C shows a cross-section of the supporting wall on the west side of the Property to demonstrate the acceptable depth and length of the soil nails under the terms of the Agreement. Exhibit D shows the general configuration of how the soil nails would be placed into a soldier pile wall. Exhibit E specifies the insurance requirements and the address where proof of insurance is to be sent.

On December 28, 2012, Daly Partners, LLC purchased the Property on behalf of 1701 Dexter, LLC (1701 Dexter) from Inhabit, and 1701 Dexter assumed Inhabit's rights under the Agreement. Daly Partners, LLC is an affiliate of 1701 Dexter, and James Daly is the manager of 1701 Dexter and of Daly Partners, LLC. 1701 Dexter began construction on the Property including installation of a shoring system.

On March 5, 2015, the Liikanes filed a complaint in superior court alleging breach of contract, negligence and fraud, criminal trespass, unjust enrichment, pain and suffering, and abuse of process. They also sought a declaration that the Agreement was void and unenforceable. The complaint named the Daly Parties as well as the City of Seattle and Pavilion Construction as defendants but

did not name 1701 Dexter. The Liikanes filed a motion for summary judgment on April 21, 2015.[2]

The Daly Parties filed a cross motion for summary judgment on May 1, 2015, claiming the Agreement was valid, they were in compliance with its terms, and the remainder of the Liikanes' claims were meritless. Attached to the motion was a declaration of John Byrne. Byrne stated that he is a civil geotechnical engineer, and he created the drawings for Inhabit that were attached as Exhibits C and D to the Agreement. He stated that he designed the shoring system ("Shoring System") used on the Property in a manner that complies with all three requirements of the Agreement. Specifically: (1) The soil nails have been placed at least 15 feet below the grade of the Liikane property, which is three times deeper than required by the Agreement; (2) none of the soil nails extend further than 32 feet onto the Liikane property, which is 13 feet less than what the Agreement allows; and (3) the soil nails are placed in a soldier pile wall in the general configuration shown in Exhibit D to the Agreement.

Byrne attached copies of the plans for the installed Shoring System, as Exhibit 4 and stated that the cross-section shown on Exhibit C to the Agreement and the cross-section in the attached plans are identical. He attached Exhibit 5 which showed the wall that was actually constructed on the Property and stated that it is essentially identical to Exhibit D of the Agreement. He noted that there are minor differences but they are immaterial and the soldier pile wall that was

---

[2] The Liikanes' motion for summary judgment is not part of the record. See RAP 9.2; State v. Sisouvanh, 175 Wn.2d 607, 619, 290 P.3d 942 (2012) (party claiming error on review has the burden of providing an adequate record to establish the error).

4

constructed was in the same "general configuration" as that shown in Exhibit D. Thus, the Shoring System installed is consistent with respect to the requirements set forth in the Agreement.

The Daly Parties also attached the declaration of James Daly. Daly stated that 1701 Dexter's attorney sent the $2,000 payment and proof of insurance to the Liikane owners' notice address via certified mail on January 7, 2015, but the Liikane owners did not pick up the letter. He attached a copy of the delivery attempt and the letter as Exhibit H.

Although Märt Liikane (Mr. Liikane) was no longer an owner of the Liikane property, he had previously met with Daly when he contacted 1701 Dexter regarding the Property and the project. Mr. Liikane had told Daly that the Agreement was invalid and insisted that 1701 Dexter needed to negotiate a new agreement in order to install the shoring system. In his declaration, Daly stated that he personally attempted to tender the notice letter, payment, and proof of insurance to Mr. Liikane during an in-person meeting on February 9, 2015, but Mr. Liikane refused to accept them. Daly attached a photo of Mr. Liikane taken during the meeting and stated that the envelope in front of Mr. Liikane in the photo contained the notice letter, payment and proof of insurance.

The trial court determined that the Agreement is valid and binding on the Liikane owners and that 1701 Dexter complied with the terms of the Agreement. All of the Liikanes' claims were dismissed with prejudice.

The Liikanes appeal.

"We review summary judgment orders de novo . . ., viewing all facts and reasonable inferences in the light most favorable to the nonmoving party. [S]ummary judgment is appropriate where there is 'no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'"[3] Although the evidence is viewed in the light most favorable to the nonmoving party, if that party is the plaintiff and it fails to make a factual showing sufficient to establish an element essential to its case, summary judgment is warranted.[4] "Conclusory statements and speculation will not preclude a grant of summary judgment."[5]

**1701 DEXTER ACTED IN ACCORDANCE WITH A VALID EASEMENT**

The Liikanes claim that there were genuine issues of material fact as to whether 1701 Dexter breached the Agreement. We disagree.

In interpreting an easement, we look to the language contained therein.[6] If the language is plain and unambiguous, extrinsic evidence will not be considered.[7] The Agreement is unambiguous as to what is required from 1701 Dexter as the Grantee. The affidavits of Byrne and Daly establish that 1701 Dexter complied with the requirements of the Agreement.

The Liikanes do not argue that 1701 Dexter violated any of the three restrictions contained in the Agreement. Instead, they claim that 1701 Dexter

---

[3] Elcon Const., Inc. v. E. Washington Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012) (quoting CR 56(c)).
[4] Young v. Key Pharmaceuticals, Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989).
[5] Elcon Const., Inc., 174 Wn.2d at 169.
[6] Sunnyside Valley Irr. Dist. v. Dickie, 149 Wn.2d 873, 880, 73 P.3d 369 (2003).
[7] Id.

breached the Agreement by failing to follow the original building plans developed for Inhabit and by changing the location, angles and dimensions of the soil nails. We reject the Liikanes' contentions because Inhabit's building plans are not incorporated into the Agreement; the only "plans" that are part of the Agreement are the drawings attached as Exhibits C and D to illustrate the depth and extension of the soil nails and the general configuration of the nails once installed. Byrne's declaration and the attachments thereto establish that the Shoring System constructed complies with the requirements of the Agreement. Because the soil nails were installed in accordance with the restrictions contained in the Agreement, any other variances as to location, angles or dimensions do not constitute a breach.

The Liikanes also allege that 1701 Dexter breached the Agreement by failing to tender the $2,000. However, they have failed to rebut Daly's statement that payment was tendered but refused.[8] Although the Liikanes contend that the Agreement was breached because the City of Seattle issued unwarranted building permits, we disagree because any such permits did not apply to the Liikane property and they are not part of the Agreement.

Finally, although the Liikanes allege that no changes could be made without their written approval, that restriction only applies to changes in the Agreement, not to any construction plans that the Grantee might have had.[9]

---

[8] Le Tastevin, Inc. v. Seattle First Nat'l Bank, 95 Wn. App. 224, 230, 974 P.2d 896 (1999) (refusal to accept payment is a breach of contract).

[9] Clerk's Papers at 190 ("This Soil Nail Easement shall not be modified, amended or terminated without the prior written approval of the parties hereto.") (emphasis added).

7

## THE LIIKANES' REMAINING CONTENTIONS ARE WITHOUT MERIT

The Liikanes' contention that 1701 Dexter violated their rights under the Fourth, Seventh, and Fourteenth Amendments to the United States Constitution are without merit. First, neither 1701 Dexter nor the Daly Parties are government actors so the Fourth and Fourteenth Amendments do not apply to their actions.[10] In addition, the Liikanes have failed to allege any facts that would constitute a Fourth or Fourteenth Amendment violation.[11] They were never "seized" or "searched" for purposes of the Fourth Amendment,[12] and they have failed to allege that they are members of a suspect class for purposes of an equal protection challenge.[13] Lastly, they have failed to allege a violation of their Seventh Amendment right to a jury trial because "[t]he Seventh Amendment to the United States Constitution does not apply [through the Fourteenth Amendment] to civil cases in state courts."[14]

---

[10] U.S. Const. amend. XIV (No State "shall deny to any person within its jurisdiction the equal protection of the laws."); see United States v. Jacobsen, 466 U.S. 109, 113-14, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984); Gray v. Univ. of Colorado Hosp. Auth., 672 F.3d 909, 927 (10th Cir. 2012) ("Due Process Clause of the Fourteenth Amendment by its plain language applies only to state action.").

[11] See State v. Johnson, 179 Wn.2d 534, 558, 315 P.3d 1090 (2014) (noting that an appellant raising constitutional issues must present considered arguments to this court, and "[n]aked castings into the constitutional seas are not sufficient to command judicial consideration and discussion") (quoting State v. Blilie, 132 Wn.2d 484, 493 n.2, 939 P.2d 691 (1997)).

[12] Jacobsen, 466 U.S. at 113.

[13] See State v. Osman, 157 Wn.2d 474, 484, 139 P.3d 334 (2006).

[14] Bird v. Best Plumbing Group, LLC, 175 Wn.2d 756, 768, 287 P.3d 551 (2012).

8

Finally, because 1701 Dexter operated in accordance with the terms of the Agreement, the Liikanes' trespass claim fails.[15]

## ATTORNEY FEES

The Daly Parties seek an award of attorney fees incurred on appeal claiming the Liikanes' appeal was frivolous. Because we disagree, we deny this request.

Rule 18.9(a) permits the court to require a party to pay the fees of another party for defending a frivolous appeal. "[A]n appeal is frivolous if it raises no debatable issues on which reasonable minds might differ and it is so totally devoid of merit that no reasonable possibility of reversal exists."[16] Because doubts about whether the appeal is frivolous are resolved in favor of the appellant,[17] a fee award is not warranted in this case.

We affirm the order granting summary judgment. We deny the request for fees on appeal.

_Cox, J._

WE CONCUR:

_Leach, J._          _Spearman, J._

---

[15] See Wallace v. Lewis County, 134 Wn. App. 1, 15, 137 P.3d 101 (2006); Fradkin v. Northshore Util. Dist., 96 Wn. App. 118, 123, 977 P.2d 1265 (1999).

[16] Protect the Peninsula's Future v. City of Port Angeles, 175 Wn. App. 201, 220, 304 P.3d 914 (2013)).

[17] Id.